**WRIGHT WAY CONSTRUCTION COMPANY, INC. and Atlantic Insurance Company, Appellants,**

v.

**HARLINGEN MALL COMPANY, a Texas Limited Partnership, Appellee.**

No. 13–89–312–CV.

Court of Appeals of Texas, Corpus Christi.

Oct. 18, 1990.

Appellants' Rehearing Granted Oct. 18, 1990.

Appellee's Rehearing Overruled Oct. 18, 1990.

Second Motion for Rehearing Overruled Nov. 15, 1990.

**416**

Roger W. Hughes, Adams & Graham, Harlingen, Charles C. Murray, Atlas & Hall, McAllen, Tom Lockhart, Adams, Graham, Jenkins, Graham & Hamby, Harlingen, for appellants.

Robert C. Sheline, Gibbon, Gibbon & Sheline, Harlingen, Russell H. McMains, McMains & Constant, Corpus Christi, Charles A. Carlson, III, Harlingen, Kimberly Hall Seger, McMains & Constant, Corpus Christi, for appellee.

Before KEYS, KENNEDY, and SEERDEN, JJ.

## OPINION

KEYS, Justice.

Our former opinion is withdrawn in favor of the following.

### I.

Appellee, Harlingen Mall Company, filed suit against Wright Way Construction Company, and Atlantic Insurance Company, Inc.,[1] appellants, for breach of contract and breach of warranty. The Mall also sued Atlantic for breach of the duty of good faith and fair dealing. The basis for the contract and warranty claims was Wright Way's use of improper paving methods. This allegedly caused premature ravelling[2] in Valle Vista Mall's parking lot. The jury found Wright Way breached the contract and failed to find Atlantic breached the duty of good faith and fair dealing. The trial court entered judgment jointly and severally against Wright Way and At-

1. Atlantic is the surety for Wright Way.

2. Ravelling describes a condition occurring in asphalt whereby the rocks, sand, and other material in the asphalt breaks away from the surface. When this occurs the rocks accumulate on the surface of the asphalt and must be swept up. The causes of excessive ravelling include improper materials and air pockets within the asphalt.

lantic for damages and against Wright Way for Attorneys' fees.

By eleven points of error appellants Atlantic and Wright Way argue that the trial court erred. The Mall brings one cross point. Due to the failure of the trial court to instruct the jury on the defense of estoppel, we reverse and remand for a new trial. Portions of the judgment are not appealed and therefore final.

In addition to the Mall and Wright Way, the other participants in this dispute were Robert Wright, Melvin Simon & Associates (Melvin Simon), Lockwood, Andrews, & Newnam, Inc. (LAN), and Raba–Kistner. Robert Wright owned Wright Way. Melvin Simon was the Mall's developer. LAN was the engineering firm hired by the Mall. Raba–Kistner was an independent geo-technical engineering firm employed by the Mall. Raba–Kistner played a disputed role in this litigation.

The uncontroverted facts indicate that the Mall employed Raba–Kistner to do field testing, quality control, and other engineering work. Testimony and a letter indicate that Raba–Kistner was to create the crucial batch design[3] and conduct quality control. According to the Mall, Wright Way's failure to do a batch design and conduct quality control were the cause of the abnormal ravelling. According to Wright Way, this contractual requirement was either waived, or the Mall was estopped to enforce it because they agreed that Raba–Kistner was to perform these functions.

On March 9, 1982, the Mall and Wright Way signed a contract requiring Wright Way to pave the parking lot and perform other work involved in the construction of the Valle Vista Mall. The contract called for a parking lot with a compacted subgrade injected with lime slurry, a cement stabilized caliche base, and a Class A Type D hot mix asphaltic concrete surface one and one half inches thick. The contract required appellant to employ a "reputable commercial laboratory" to develop a batch design and for quality control. Additionally, the contract required the work to be performed in a good and workmanlike manner. The contract included two warranties. The original warranty covered defects in materials and workmanship occurring within one year from date of acceptance, as well as latent defects. The second warranty covered defects occurring until April 1, 1984.

In May 1982, Wright Way began laying down the asphaltic concrete surface. Almost immediately, differences of opinion arose concerning the proper paving procedures. Specifically, LAN complained that the asphalt was being rolled after it had cooled and joints were not cut. In some instances, it was rolled the day after it was laid. Nevertheless, the work was accepted during June and most of July.

An additional dispute arose concerning batch design and quality control. The Mall requested a batch design prior to the lay down of the asphalt, but Wright Way did not provide one. Robert Wright testified that he was going to hire Shilstone, a local lab. He did not hire Shilstone, however, because he was told Raba–Kistner would do the batch design. On June 18, 1982, Melvin Simon & Associates wrote a letter to Robert Wright indicating an agreement existed under which Raba–Kistner would conduct the batch design and quality control. On July 16, 1982, the Mall withheld a $90,000.00 payment to Wright Way because of dissatisfaction with Wright Way's procedures. This dispute was resolved when Wright Way offered the second warranty. The job was completed and accepted by the Mall. It opened in July 1983.

Around January 1984, the pavement began ravelling and some potholes appeared. Wright Way made an effort to repair these problems but they continued to get worse. The Mall attempted to get Wright Way to fix the problem areas pursuant to the warranty but was not satisfied with Wright Way's efforts to fix the ravelling. Immedi-

---

**3.** A batch design is a recipe for the hot mix asphalt. Appellee argued that this recipe was required in order to determine whether the asphalt supplied met their specifications. One of the disputes at trial was whether Wright Way's contractual duty to create a batch design was undertaken by Raba–Kistner.

ately prior to the warranty's expiration on April 1, 1984, a series of letters were sent to Wright Way seeking pavement repairs. At that time about 10% of the pavement was ravelling. On March 23, 1984, the Mall sent another letter to Wright Way and Atlantic requesting repairs under the warranty. Wright Way did not respond. After April 1, the warranty deadline, the Mall again sent a letter to Wright Way and the bonding company requesting repairs and stating that if repairs were not made the Mall would consider Wright Way in breach of the contract.

In October 1984, Robert Wright and an engineer from Melvin Simon met at the Mall and discussed the ravelling. Robert Wright told the engineer that he would repair the parking lot by applying a surface coating to those areas that were ravelling.

Problems with the pavement and Wright Way continued. By spring of 1985, the entire parking lot was ravelling and Wright Way had not repaired it as promised. On April 15, 1985, Melvin Simon sent a letter to Robert Wright and Atlantic indicating that the entire parking lot needed repair due to ravelling. The basis for the requested repairs was the latent defects provision of the warranty. At roughly the same time, early April, Raba–Kistner inspected and surveyed the parking lot. The survey divided the parking lot into three color coded zones in need of different types of repairs. Wright Way promised to repair the red zone for no charge under the warranty. The Mall accepted bids on the two other areas. Although Wright Way had not placed a bid, the Mall requested a bid on the other areas from Wright Way. Wright Way later bid on the work but did not get the job. Subsequently, the Mall paid a different paving contractor to apply a seal coat to the entire parking lot, including the areas Wright Way promised to repair. On June 4, 1986, the Mall demanded that Wright Way pay $211,387.50 for this work, and over $6,000.00 for attorney's fees.

On August 5, 1986, this suit was filed. The Mall's theory of the case was that Wright Way's failure to do a batch design caused the ravelling because the batch design was needed to monitor the percentage of air in the asphalt, a critical design parameter. This design parameter was not monitored by Raba–Kistner during paving. The problem was compounded, according to the Mall, by improper compaction methods. Wright Way's defense was that the Mall waived or was estopped from complaining of the failure to conduct a batch design or any other defect in the construction.

The trial court refused the instructions offered by Wright Way on waiver and estoppel and submitted a broad form question. After the jury reached a verdict, the court entered judgment against Wright Way and Atlantic for $350,000.00, and awarded $157,721.00 for attorneys fees and costs against Wright Way, but not Atlantic. The jury found no breach of the duty of good faith and fair dealing by Atlantic.

## II.

Wright Way and Atlantic, by their first point of error, bring into focus the principal question presented in this appeal: whether the question submitted to the jury, unaided by the refused instructions, encompassed estoppel, appellant's controlling defensive issue. We hold that it did not. First we must determine if the error was preserved.

## A.

■ In order to preserve charge error appellant must comply with Tex.Rules Civ.P. 271–279. If the error is the omission of an instruction relied on by the requesting party three steps are required by the Rules to preserve error: a proper instruction must be tendered in writing and requested prior to submission; a specific objection must be made to the omission of the instruction; and the court must make a ruling.

As a preliminary matter, on motion for rehearing the question has been raised by both parties whether both an objection and a request for submission is required to preserve error where a party complains of the omission of its instruction in the court's charge. Some confusion exists in this area. *See e.g.* Dorsaneo and McMains, *The Sub-*

*mission of the Case to the Jury: Back to the Past*, 60–61, Advanced Appellate Practice Course (October 1990) (objection and request are not required to preserve charge error). This court has repeatedly held that an objection and a proper request are required to preserve charge error if the trial court omits a question, definition or instruction relied on by the requesting party. *National Fire Ins. v. Valero Energy Corp.*, 777 S.W.2d 501, 508 (Tex.App.—Corpus Christi 1989, writ denied); *Texas Cookie Co. v. Hendricks & Peralta, Inc.*, 747 S.W.2d 873, 878 (Tex.App.—Corpus Christi 1988, writ denied); *Donnelley Marketing v. Lionel Sosa, Inc.*, 716 S.W.2d 598, 602 (Tex.App.—Corpus Christi 1986, no writ). *See also Texas Power & Light Co. v. Barnhill*, 639 S.W.2d 331, 334 (Tex.App.—Texarkana 1982, writ ref'd n.r.e.). The Texas Supreme Court has interpreted the rules in this manner for at least thirty five years. *Yellow Cab and Baggage Co. v. Green*, 154 Tex. 330, 277 S.W.2d 92, 93 (1955).

One reason why both are required is found in the language of rule 274 which states in part: "A party objecting to the charge must point out distinctly the objectionable matter and the grounds of the objection. Any complaint as to a[n] ... instruction on account of any ... omission ... is waived unless specifically included in the objections." Rule 272 also states a specific objection is required to preserve error. Rule 278 creates a limited exception if the question is relied on by the opposing party.

The second reason why both a specific objection and a request is required in this situation is to protect the trial court from committing reversible error during the charge hearing. Historically, charge error has been a serious problem in Texas. *See e.g. Lemos v. Montez*, 680 S.W.2d 798, 801 (Tex.1984) (discussing problems prior to broad submission). The purpose of a Rule 274 objection is to require the attorneys to bring to the court's attention the error in the charge, and thereby eliminate the potential for reversal caused by charge error.

Rule 278 requires that the requested instruction be tendered in writing prior to submission. This rule indicates that a specific objection is not required where a question is relied upon by the opposing party. In this case, the requested instruction was relied on by the requesting party, thus an objection and a request for submission was required to preserve error. *Yellow Cab and Baggage Co.*, 277 S.W.2d at 93; Tex.R. Civ.P. 274.

A ruling is also required to preserve error. *See Acord v. General Motors Corp.*, 669 S.W.2d 111, 114 (Tex.1984); Tex.R. Civ.P. 272, 276; Tex.R.App.P. 52(a). To summarize, if the trial court refuses to instruct on an issue relied upon by the requesting party, to preserve error the party must object, tender and request, and obtain a ruling.

### B.

The first question we address is whether the objection to the court's failure to instruct on waiver and estoppel was sufficiently specific under Rule 274. The court submitted the question: "Did Wright Way fail to perform the contract between Wright Way and the Mall in accordance with its terms?" Appellants' requested instructions provided:

4. You are instructed that a party has no claim for breach of warranty or contract if he is estopped. A party is estopped if (1) the party conceals or misrepresents material facts; and (2) that party knows or should know the facts; and (3) that party makes the representation or conceals the facts with the intent the other party should act on it; and (4) the other party acts on it to its detriment without knowledge of the real facts.

5. You are instructed that a party may waive or give up a breach of warranty or breach of contract claim. If a party waives such a breach or failure, there is no breach of warranty or contract. "WAIVER" is an intentional relinquishment of a known right or intentional conduct inconsistent with claiming it. You may infer waiver exists (but are not required to infer) from evidence, if any, of (1) a party's silence or inaction, coupled with knowledge of the right, for

such an unreasonable period of time so as to indicate an intent to give up the right; or (2) conduct of the party knowingly possessing the right of such nature as to mislead the other party into an honest belief that waiver was intended or agreed to...

Appellant Wright Way objected:

Furthermore, Defendant Wright Way objects to the omission of its requested instruction No. 4 filed with this Court on March 20, 1989, regarding estoppel as Defendant Wright Way says such is raised by the evidence.

Furthermore, Defendant Wright Way objects to the omission of its requested Instruction No. 5 on waiver which was filed with this Court on March 20, 1989.

The essence of this objection to the failure to submit the instruction on estoppel is it is raised by the evidence.

■ Rule 274 sets forth a rigorous standard for sufficiency of charge objections:

A party objecting to a charge must point out distinctly the objectionable matter and the grounds for the objection. Any complaint as to a question, definition, or instruction on account of any defect, omission, or fault in pleading is waived unless specifically included in the objections. When the complaining party's objection, or requested question, definition, or instruction is, in the opinion of the appellate court, obscured or concealed by voluminous unfounded objections, minute differentiations or numerous unnecessary requests, such objection or request shall be untenable. No objection to one part of the charge may be adopted and applied to any other part of the charge by reference only.

This Rule creates a two pronged test: objections to the charge must specify the error and the legal basis of the objection. *Castleberry v. Branscum*, 721 S.W.2d 270, 276–77 (Tex.1986). Rule 274 is strictly construed. For example, in *Castleberry*, the objection that the instructions might "confuse the jury" or "prejudice the defendant" was held too general because it did not explain why the instruction was defective or how it would confuse the jury or prejudice the defendant.

■ In applying the two pronged test set forth in Rule 274, we note that Wright Way clearly specified the error as the omission of the instruction on estoppel. We hold that the objection was sufficient to meet the first prong of the Rule 274 test, i.e., it distinctly and separately points out the objectionable matter to the court. *Castleberry* 721 S.W.2d at 277; Tex.R. Civ.P. 274.

The legal basis of the objection was stated with sufficient particularity as well: estoppel was raised by the evidence. Rule 278 states: "The court shall submit the ... instructions ... which are raised by the evidence"; thus, unlike the general objections in *Castleberry*, this objection went to the heart of the issue.[4] The court's apparent failure to understand this objection cannot be attributed to any defect in the objection. We hold that this objection was specific enough to preserve the charge error regarding estoppel complained of on appeal. *Castleberry*, 721 S.W.2d at 277; Tex. R.Civ.P. 274.

■ The objection to the trial court's failure to submit waiver fails the second prong of the Rule 274 test. It nowhere specifies the legal basis of the objection. We hold this issue was not preserved and therefore waived.[5] Appellant Atlantic

---

**4.** This objection is congruent with appellant's complaint in this court, *see Davis v. Campbell,* 572 S.W.2d 660, 663 (Tex.1978); *Corpus Christi Bank & Trust v. Roberts,* 587 S.W.2d 173, 185 (Tex.Civ.App.—Corpus Christi 1979) *affirmed in pertinent part,* 597 S.W.2d 752 (Tex.1980) (objection must correspond with complaint on appeal), and therefore is not waived.

**5.** Appellants argue that the Bill of Exceptions is sufficient to preserve error. The Bill indicated that the instructions were properly tendered,

refused by the court, and Wright Way excepted to the refusal. The Bill did not indicate that all the requirements for preservation of charge error were fulfilled. Although the Bill did effectively preserve the trial court's failure to endorse the instructions "refused" (the court's ruling), it did not indicate that a specific objection was made, and what that objection was. The statement of facts indicates that a specific objection was not made. Absent a conflict between the statement of facts and the Bill, the statement

failed to preserve all error in the charge because it adopted Wright Way's objections by reference when it made its own objections. Tex.R.Civ.P. 274.

In addition to *Castleberry*, we find the reasoning in *Ahlschlager v. Remington Arm Co. Inc.*, 750 S.W.2d 832, 833 (Tex. App.—Houston [14th Dist.] 1988, writ denied) persuasive. In *Ahlschlager* the court held that an objection to instructions as a comment on the evidence was sufficient to preserve error. The court noted that requiring a litigant to "spontaneously" explain in great detail how the instruction was a comment on the evidence would require full scale appellate arguments at charge hearings and would defeat the policy behind Rule 274 of minimizing unduly verbose objections, *Ahlschlager*, 750 S.W.2d at 833.

### C.

Our next step is to determine if a substantially correct instruction was properly tendered in writing and requested prior to submission and separate and apart from the objections, *Greenstein, Logan & Co. v. Burgess Mktg Inc.*, 744 S.W.2d 170, 182 (Tex.App.—Waco 1987, writ denied); *see also Valero*, 777 S.W.2d at 507; Tex.Rules Civ.P. 272, 277, 278. Our first inquiry is whether the tendered instruction is substantially correct. Tex.Rule Civ.P. 278.

Appellee complains that the instruction is not substantially correct because it is too broad, it lacks essential definitions, and it contains abstract principles of law, citing *Texas Gen. Indem. Co. v. Welch*, 595 S.W.2d 205, 207–08 (Tex.Civ.App—Eastland 1980, writ ref'd n.r.e.). Appellee argues that the trial judge did not abuse his discretion in refusing the instruction, citing *Magro v. Ragsdale Brothers Inc.*, 721 S.W.2d 832 (Tex.1986).

"An instruction is proper if it finds support in any evidence and the inferences to be drawn therefrom, and if it might be of some aid or assistance to the jury in answering the issues submitted." *Valero* 777 S.W.2d at 507; *see also Bissett v. Texas Employers Ins. Ass'n.*, 704 S.W.2d 335, 337 (Tex.App.—Corpus Christi 1986, writ ref'd n.r.e.). Appellants' instruction on estoppel is substantially correct because it tracks the law. *See Swiderski v. Prudential Property & Casualty Ins.*, 672 S.W.2d 264, 268–69 (Tex.App.—Corpus Christi 1984, writ dism'd) (waiver and estoppel). Moreover, we find it is not too broad because it would be of some aid and assistance to the jury. *Valero*, 777 S.W.2d at 507; *Bissett*, 704 S.W.2d at 337.

■ Appellee asserts that the proposed instruction for estoppel is defective without a definition for "material misrepresentations". These words as applied in the proposed instruction do not have a legal meaning different from their ordinary meaning, thus, no definition was necessary. *See* 3 McDonald, *Texas Civil Practice*, § 12.14.3(c) (1983); *Kindred v. Con/Chem, Inc.*, 644 S.W.2d 828, 830 (Tex.App.—Corpus Christi 1982), *rev'd on other grounds*, 650 S.W.2d 61 (Tex.1983) ("unreasonably dangerous" need not be defined because the definition is not necessary for the jury to properly consider the special question). Appellee also complains that this instruction contains abstract principles of law. Because it contains a sentence explaining the application of the principles of law to the instant case, the instruction is not abstract. *Welch*, 595 S.W.2d at 207–08.

Appellant's Bill of Exceptions stated that the charge was presented to the court and opposing counsel prior to submission. This conclusively establishes this fact. Tex.R. App.P. 52(c)(9). The statement of facts indicates that a proper request was made. Thus, a substantially correct instruction on estoppel was tendered in writing and properly requested prior to submission.

### D.

■ The next step in preservation of this complaint was for appellant to obtain a

---

of facts controls. Tex.R.App.P. 52(c)(9). In addition, we note that a proper objection is specifically required to preserve error in the court's instructions to the jury through a Bill of Excep- tions. Tex.R.App.P. 52(c)(3). Thus, appellant cannot argue that the Bill somehow preserved undesignated error.

ruling. If the requested instruction is endorsed "refused" by the trial court it is conclusively presumed that the charge was timely presented to the court and certain other requirements were established. Tex. R.Civ.P. 276. In this case, although the trial court orally refused appellant's requested instructions, appellant did not obtain the trial court's endorsement. Appellant filed a Bill of Exceptions to establish that a ruling was made. *See Greenstein,* 744 S.W.2d at 181; *Newman v. Delhi Gas Pipeline Co.,* 517 S.W.2d 635, 636 (Tex.Civ. App.—Tyler 1974, no writ) (indicating a formal bill is a proper method to preserve error); *Cantrell v. Garrett,* 342 S.W.2d 466, 468 (Tex.Civ.App.—Houston 1961, no writ); Tex.R.App.P. 52(c).

The Bill of Exceptions stated that the instructions on waiver and estoppel were refused by the court, and appellant excepted to the court's ruling. The Bill was sufficient to establish that the court refused the instructions. Tex.R.App.P. 52(c)(9). This completed the three steps necessary for preservation of appellants' complaint concerning the court's failure to give the instruction on estoppel.

### III.

The next step in our analysis is to determine whether the trial court's failure to give the requested instruction was error. Our starting point is the proposition that broad form questions should be submitted to the jury. *Texas Dept. of Human Ser. v. E.B.,* 33 Tex.Sup Ct.J. 596 (June 23, 1990); *Lemos,* 680 S.W.2d at 801 (broad issues are the correct method); *Mobil Chem. Co. v. Bell,* 517 S.W.2d 245 (Tex.1974); Tex.R. Civ.P. 277. In determining how to frame the issue to the jury, the "trial court has almost complete discretion, so long as the issue in question is unambiguous and confines the jury to the pleading and evidence.", *Haas Drilling Co. v. First Nat'l Bank,* 456 S.W.2d 886, 889 (Tex.1970); *Baker Marine Corp. v. Moseley,* 645 S.W.2d 486, 488–89 (Tex.App.—Corpus Christi 1982, writ ref'd n.r.e.) (trial court has great discretion, the only requirement being that the issue fairly submit the disputed issues to the jury.).

■ The trial court's discretion, however, is not unfettered. A litigant is entitled to have controlling questions of fact submitted to the jury if they are supported by "some evidence". Tex.R.Civ.P. 278; *Moore v. Lillebo,* 722 S.W.2d 683, 686–87 (Tex.1986) (reversing for new trial because trial court failed to submit requested issues that were supported by some evidence); *Brown v. Goldstein,* 685 S.W.2d 640, 641 (Tex.1985); *Kindred,* 650 S.W.2d at 63 (if issue is supported by more than a scintilla of evidence it must be submitted to the jury); *Hylander v. Groendyke Transp. Inc.,* 732 S.W.2d 692, 694 (Tex.App.—Corpus Christi 1987, writ ref'd n.r.e.).

■ Controlling issues may be submitted to the jury by questions, instructions, definitions, or through a combination thereof. Tex.R.Civ.P. 278. The essential requirement is that through this process the controlling issues be presented to the jury.

■ A controlling or ultimate issue is one that presents to the jury a complete ground of recovery or defense. *Gomez v. Franco,* 677 S.W.2d 231, 234 (Tex.App.— Corpus Christi 1984, no writ); *see also Clark v. McFerrin,* 760 S.W.2d 822, 825 (Tex.App.—Corpus Christi 1988, writ denied) (ultimate fact is essential to a right of action or defense). Estoppel is a controlling issue in the instant case because the jury could have found, based on the evidence, that it barred recovery under the contract despite a breach. The pleadings and, importantly, some evidence supported this issue, as noted in more detail hereafter. The pivotal question, therefore, is whether estoppel was encompassed within the charge given to the jury.

In *Island Recreational Development Corp. v. Republic of Texas Savings Association,* 710 S.W.2d 551 (Tex.1986), the Supreme Court of Texas addressed the issue whether reversible error occurred in a jury charge which encompassed waiver. The Court found, under the facts of that case, that the jury considered waiver and favorably found this issue for the proponent of that issue. The failure to instruct on waiv-

er was thus not *reversible* error. The Court also held that the "trial court should submit appropriate accompanying instructions." After reviewing the totality of the trial proceedings, the Court concluded that the jury clearly considered the issue of waiver from the arguments of counsel, the evidence, the wording of the question submitted, and the jury's response.

The Court indicated that arguments of counsel presented the theory of waiver to the jury. *Id.* at 556. Waiver was raised by the evidence. *Id.* at 556. The jury charge was broadly worded to determine whether the "plaintiffs performed their obligations". *Id.* at 554. Most significantly, the jury verdict was in favor of the proponent of waiver, and it appears this verdict was possible only by an affirmative finding of waiver. *Id.* at 555. The Court concluded that the jury must have considered waiver and found it in favor of the proponent.

In contrast to *Island Recreational,* we are not aided by the compelling conclusion that the jury considered estoppel because the jury's findings were not for Wright Way, the proponent of the estoppel instruction. Under *Island Recreational,* we must therefore examine the events at trial to determine whether the jury considered the omitted instruction and found that issue against appellant. We conclude it did not.

The evidence supported appellant's estoppel defense on breach of contract and breach of warranty theories [6]. For example, the contract required Wright Way to develop a batch design for the asphalt. The Mall's expert testified that the problems in the paving were caused by a failure to develop a batch design. Some evidence that the Mall was estopped from asserting this requirement is found in a letter from Melvin Simon to Robert Wright dated June 18, 1982. The letter stated that the Mall's engineering firm, Raba–Kistner, would provide batch design and quality control. Robert Wright repeatedly testified that he attempted to hire a reputable commercial laboratory to perform these services as required by the contract but was told to refrain because Raba–Kistner would do this.

The contract also required Wright Way to perform in a good and workmanlike manner. Whether this occurred was disputed. The evidence showed that the engineers on the job objected to Wright Way's practice of rolling the pavement the day after it was laid down and that they also had other problems with Wright Way's methods. However, Wright Way put on evidence which showed that the work was accepted and paid for by the Mall. Additionally, reports by Raba–Kistner indicated that the pavement met specifications [7], and reports by LAN indicated that lay-down procedures were acceptable. This evidence also supported the defense of estoppel.

Due to concerns over the longevity of the pavement, the Mall and Wright Way reached an agreement providing an extended warranty. This warranty indicated that the dispute between the parties over the workmanship were resolved in return for the extended warranty. This too, was evidence supporting the estoppel defense.

The Mall apparently considered the work acceptable well after the April 1, 1984 deadline. When additional work was needed, the Mall requested that Wright Way bid on the work. Later, after the case had been referred to local counsel, a letter was written to Wright Way demanding that they pay for this work.

Estoppel was raised by the evidence; however, the charge failed to guide the jury on this issue. In fact, the question actually given tended to preclude such findings. The question submitted was: "Did Wright Way fail to perform the contract

---

6. The question asked of the jury only inquired about a breach of contract claim; however, a warranty was included in the contract, thus breach of warranty was encompassed within the question. Because there is some evidence that estoppel bars the breach of warranty claim we cannot affirm on that ground.

7. A report from Raba–Kistner indicated that the cause of ravelling was the Mall's specification of river gravel instead of limestone as an aggregate, and not construction defects. Apparently, the river gravel is round and easily comes out of asphalt.

between Wright Way and the Mall in accordance with its terms?" The problem with this question is it does not encompass the estoppel defense which was raised by the evidence. The wording of the question is ambiguous and misleading because it suggests that only the express terms are included and implies that estoppel was not a defense. The instruction tendered by appellant would have eliminated this deficiency.

In contrast, the question asked in *Island Recreational* did not suggest that only the terms of the contract were at issue; rather, it referred to the obligations of the parties, a broader and more encompassing statement. Thus, the question in *Island Recreational* as well as its context are distinguishable. Moreover, in *Island Recreational* neither party objected when the issue of waiver was not submitted; however, in this case there was a proper objection to the courts failure to submit the instruction on estoppel. We hold that failure to instruct on the properly requested issue of estoppel was error.

## IV.

The next issue we reach is whether this error was reversible. We are guided by *Island Recreational* where the Court stated:

> To determine whether an alleged error in the jury charge is reversible, the reviewing court must consider the pleadings of the parties, the evidence presented at trial, and the charge in its entirety. Alleged error will be deemed reversible only if, when viewed in the light of the totality of these circumstances, it amounted to such a denial of the rights of the complaining party as was reasonably calculated and probably did cause the rendition of an improper judgment.

*Id.* at 555.

The evidence supported the defense of estoppel. The trial court's failure to instruct on this matter effectively directed a verdict upon it. Based on the evidence, the jury could have found that appellee was estopped from recovering for defects in the paving. Unlike *Island Recreational,* the jury verdict was against the proponent of the issue, thus the error was harmful. We hold that the failure of the trial court to instruct on this defense in this case was such a denial of the rights of Wright Way as was reasonably calculated and probably did cause the rendition of an improper verdict. *Southwestern Bell Tel. Co. v. Thomas,* 554 S.W.2d 672, 674 (Tex.1977); Tex.R. App.P. 81(b)(1). Harmful error almost certainly occurs if a defendant who has properly requested an appropriate instruction on a controlling defensive issue does not have that issue submitted to the jury. That is precisely what occurred at trial, consequently the judgment based on the contract claim is reversed and remanded.

## V.

Our reversal and remand of the trial court's judgment does not dispose of the points of error in which appellant requests rendition of judgment. *Warrilow v. Norrell,* 791 S.W.2d 515, 524 (Tex.App.—Corpus Christi 1989, writ pending); Tex.R. App.P. 81(c). We therefore review appellant's points and appellee's cross point to determine if rendition is proper.

Appellant's second point of error complains that there was no evidence or insufficient evidence supporting the jury's finding that Wright Way breached the contract. Because we cannot reverse and render judgment for an insufficient evidence point we do not address that aspect of this point. *Pool v. Ford Motor Co.,* 715 S.W.2d 629, 634 (Tex.1986).

A "no evidence" point is appropriate if the party without the burden of proof challenges a finding of fact. *Croucher v. Croucher,* 660 S.W.2d 55, 58 (Tex.1983). In determining a "no evidence" point, we consider only the evidence and inferences which tend to support the finding and disregard all evidence and inferences to the contrary. *See International Armament Corp. v. King,* 686 S.W.2d 595, 597 (Tex. 1985); *Larson v. Cook Consultants, Inc.,* 690 S.W.2d 567, 568 (Tex.1958); *In Re King's Estate,* 150 Tex. 662, 244 S.W.2d 660, 661–62 (1951). If there is any evidence of probative force to support the finding,

the point must be overruled and the finding upheld. *In Re King's Estate*, 244 S.W.2d at 661–62. *See* Hall, *Standards of Appellate Review in Civil Appeals*, 21 St. Mary's L.J. 865, 908–09 (1990); Calvert, *No Evidence and Insufficient Evidence Points of Error*, 38 Tex.L.Rev. 361, 366 (1960).

■ The specific breaches alleged in appellee's petition included use of construction methods which violated standard construction practices. The jury found the contract was breached and that this was the cause of injury to appellee. The evidence showed that the batch design was a critical element of the contract, and the failure to comply with the contract in this respect was supported by the evidence. Expert testimony indicated that lack of a batch design and the resulting insufficient density by volume of the pavement could cause ravelling. After reviewing the evidence supporting the finding that the contract was breached, we hold that there is some evidence of breach. Thus, we do not render judgment for appellant.

In appellant's third, fourth and fifth points of error it argues there was no legal basis for a breach of warranty claim. The contract included several warranties including a warranty to protect against latent defects, and a warranty protecting appellee against defects occurring before April 1, 1984. Appellee argues that the defects did not appear before April 1, 1984, and no notice of these defects was given before this date. Plaintiff's eighth amended petition alleged both breach of contract and breach of warranty claims. Although evidence was admitted which supported a breach of warranty theory, the jury question only asked whether the contract was breached.

Our ruling that the evidence is sufficient to sustain appellee's breach of contract theory sustains this aspect of the judgment. It is not necessary to address the breach of warranty issues because in light of our ruling on point two, these points could not require rendition. *Warrilow*, 791 S.W.2d at 524. We therefore overrule points of error three, four and five.

In point of error six and seven appellants seek remand because the proper measure of damages was not applied. We do not reach these points of error because they would not require rendition of judgment in favor of appellants. *Warrilow*, 791 S.W.2d at 524. In the posture of the instant case, the appropriate remedy if the trial court did apply the wrong measure of damages would be a remand. *Turner, Collie & Braden v. Brookhollow, Inc.*, 642 S.W.2d 160, 165–66 (Tex.1982).

We note that appellant Atlantic failed to preserve error regarding the proper measure of damages because it failed to properly object at the charge hearing. We address this issue in Atlantic's eighth point of error below.

By appellant Wright Way's points of error eight, nine, and ten it complains that attorney's fees were improperly granted. The basis for granting appellee's attorney's fees was success at trial on the contract claim. *See e.g. Davis Masonry, Inc., v. B–F–W Const. Co. Inc.*, 639 S.W.2d 448, 448 (Tex.1982) (success at trial is a predicate to attorney's fees). Because we remand, we reverse the award of attorney's fees.

By appellant Atlantic's eighth point of error it argues that it is entitled to the benefit of Wright Way's defenses. This argument is crucial to this appeal because Atlantic failed to preserve error twice at the charge hearing. In both cases Wright Way properly objected to jury questions on estoppel and the measure of damages. Atlantic did not preserve error by incorporating Wright Way's objections by reference, Tex.R.Civ.P. 274.

The problem we are faced with is simple. On one hand, Atlantic's liability as surety is derivative. However, judgment for damages was entered jointly against Atlantic and Wright Way, and only Wright Way preserved error requiring reversal.

We resolve this point in favor of Atlantic for the following reasons. The question answered by the jury was did Wright Way breach the contract. Upon that basis the judgment was entered against Atlantic and

Wright Way. We held in point one that there was a defect in this finding because the requested instruction on estoppel did not submit this defense to the jury. Thus, the liability of Wright Way is still in question.

 The liability of a surety is derivative in nature. Such liability depends on the principal's liability. *Robberson Steel, Inc. v. Abrams, Inc.*, 582 S.W.2d 558, 564 (Tex.Civ.App.—El Paso 1979, no writ); *Girard Fire & Marine Ins. Co. v. Koenigsberg*, 65 S.W.2d 783, 786 (Tex.Civ.App.—Dallas, 1933, no writ); *see generally*, 68 Tex.Jur.3d, *Suretyship and Guarantee* (1989). Liability also depends on the language of the bond. *Howze v. Sur. Corp. of Am.*, 584 S.W.2d 263, 266 (Tex.1979). The bond provides liability only if the contractor is in default. To hold that Atlantic was liable when it has not been finally determined that Wright Way was in default would extend Atlantic's liability beyond that permitted in the performance bond.

In addition, the general rule in a similar situation is if the principal appeals and acquires a reversal, judgment against a non-appealing surety is reversed as well. *McKinney v. Collingsworth County*, 159 S.W.2d 234, 237 (Tex.Civ.App.—Amarillo 1942, no writ). *See also Hamilton v. Prescott*, 73 Tex. 565, 11 S.W. 548, 549 (1889); *Aetna Casualty & Sur. Co. v. Raposa*, 560 S.W.2d 106, 112 (Tex.Civ.App.—Fort Worth 1977, writ dism'd by agr.).

We therefore hold that Atlantic's liability is strictly derivative, and it is not liable on the bond despite its failure to preserve error. We sustain this point in favor of Atlantic and order a new trial on the contract issues for both appellants.

Appellee Mall brings one cross point complaining that the trial court erred by granting Atlantic's motion for Judgment N.O.V. which denied joint and several liability against Atlantic for appellee's attorney's fees. Our ruling on Wright Way's points eight, nine, and ten disposes of this crosspoint.

This case is REVERSED and REMANDED for a new trial on the question whether Wright Way breached the contract. That portion of the judgment finding Atlantic not liable for breach of the duty of good faith and fair dealing has not been appealed from. A new trial is not ordered for that claim. *George v. Vick*, 686 S.W.2d 99, 100 (Tex.1985); Tex.R.App.P. 81(b)(1).