NUMBER 13-03-427-CV

 

                         COURT OF APPEALS

 

               THIRTEENTH DISTRICT OF TEXAS

 

                  CORPUS CHRISTI - EDINBURG

 

 

 

COLUMBIA RIO GRANDE
REGIONAL HEALTHCARE, 

L.P, D/B/A RIO GRANDE REGIONAL HOSPITAL,             Appellant,

 

                                           v.

 

ALICE
H. HAWLEY AND JAMES A. HAWLEY,                 Appellees

 

 

 

                   On appeal from the 93rd District Court

                           of Hidalgo
County, Texas.

 

 

 

                        DISSENTING OPINION

 

              Before Justices Rodriguez,
Castillo and Garza

                    Dissenting Opinion by
Justice Castillo

 








Appellant, Columbia
Rio Grande Healthcare, L.P., d/b/a Rio Grande Regional Hospital, challenges a
final judgment entered subsequent to a jury verdict in favor of appellees,
James A. Hawley and the estate of Alice H. Hawley.  By its fourth issue, the Hospital asserts
that the trial court erred in denying its request to instruct the jury on
"new and independent cause." 
Because I would hold that the hospital has shown reversible error, I
would reverse the judgment and remand. 
Thus, I respectfully dissent because my analysis of this dispositive
issue reaches a different result.  See Tex. R. App. P. 47.1.  

I.  Background








Mrs. Hawley presented
to her regular physician of many years with symptoms of diverticulitis.  He referred her for screening and, because of
the results, she was hospitalized the same day. 
Stabilized overnight, Mrs. Hawley underwent surgery the following morning.  The surgeon removed a part of her digestive
tract.  The specimen was tested by a
pathology group, which is an independent contractor of the hospital.  A cancer diagnosis was included in the
pathology report.  The pathology report
was completed and filed in Mrs. Hawley's chart the day before her release from
the hospital.  After two subsequent short
hospital stays over a period of months, Mrs. Hawley's general health and
well-being deteriorated.  One hospital
stay involved a routine surgical procedure stemming from her initial surgery
and was performed by the same surgeon. 
The subsequent stay involved a diagnosis of a circulatory system
condition, with a follow-up clinical visit with her regular physician.  After screening showed elevated enzymes in
her liver, her regular physician recommended additional diagnostics.  After a delay stemming from the Hawleys'
pre-arranged family vacation plans, additional screening showed a dramatic
increase in the liver-enzyme level and a soft-ball sized mass on her
liver.  A biopsy showed that the mass was
malignant.  After seeking a second
opinion from a physician who obtained and reviewed her medical records, Mrs.
Hawley learned for the first time from him that, eleven months before, she was
diagnosed with intestinal cancer.[1]  Both Mrs. Hawley's treating physician and
surgeon denied receipt of the pathology report that contained the intestinal
cancer diagnosis.  No reference to the
report was made in discharge summaries dictated post-surgery and post-hospital
stays.  

Mr. and Mrs. Hawley
sued the hospital for negligence.  At the
heart of their claim was a policy the hospital had in place for transmitting
cancer-diagnosis pathology reports to treating physicians and surgeons.  The distribution policy includes the
distribution of the original pathology report "to the medical
record."  For a report "positive
for cancer," the distribution policy states, in part:

A.  Pathologist will verbally notify physician(s)
of record 

 

B.  Pathology secretary will fax report to
physician(s) of record

 

C.  Reports will be delivered to physician(s) of
record via certified mail

 








The jury heard that it
was the custom and practice of the pathology department employees to transmit
cancer reports by fax and certified mail to the physicians involved,
"without exceptions."  The jury
also heard that pathologists would attempt verbal notification, with success
dependent on immediate contact with the physician or a return telephone
call.  At the time in question, no logs
to document the distribution were in place. 
Evidence showed that a return receipt confirmed delivery of the
pathology report to Mrs. Hawley's treating physician.  The jury heard from numerous witnesses
qualified to testify as experts.  From
those witnesses the jury heard that the original pathology report was in Mrs.
Hawley's chart prior to her release and the discharge summary did not reference
the report, indicating the report was not read. 
Therefore, according to those witnesses, irrespective of the
distribution policy, a responsibility existed, at a minimum, that the treating
physician or surgeon secure the report to determine (1) what was removed from
the patient during surgery, (2) the diagnosis, and (3) the post-surgical
treatment.  

At the close of
evidence, the hospital requested, among other things, the pattern jury charge
instruction on new and independent cause. 
The trial court denied the instruction. 
The jury charge contains the following instruction:  

"Proximate
cause," when used with respect to the conduct of RIO GRANDE REGIONAL
HOSPITAL, means that cause which, in a natural and continuous sequence,
produces an event, and without which cause such event would not have occurred.  In order to be a proximate cause, the act or
omission complained of must be such that a hospital using ordinary care would
have foreseen that the event, or some similar event, might reasonably result
therefrom. There may be more than one proximate cause of any event. 

 

The jury answered
"yes" to jury Question No. 1 which states, "Was the negligence,
if any, of RIO GRANDE REGIONAL HOSPITAL, a proximate cause of injuries to ALICE
H. HAWLEY?"  The jury awarded damages.  The trial court entered the judgment from
which the hospital appeals.  








II.  Jury Charge Error

A.  Standard of ReviewBJury Charge Error








The standard of review
for error in the jury charge is abuse of discretion, R & R Contractors
v. Torres, 88 S.W.3d 685, 696 (Tex. App.BCorpus Christi 2002, no pet.), which occurs only
when the trial court acts without reference to any guiding principles.  In re V.L.K., 24 S.W.3d 338, 341 (Tex.
2000).  A trial court abuses its
discretion by acting arbitrarily, unreasonably, or without reference to guiding
rules or principles.  Downer v.
Aquamarine Operators, Inc., 701 S.W.2d 238, 241‑42 (Tex. 1985);
Kajima Int'l v. Formosa Plastics Corp., 15 S.W.3d 289, 291 (Tex. App.BCorpus Christi 2000,
pet. denied).  The trial court has
considerable discretion to determine necessary and proper jury
instructions.  In re V.L.K., 24
S.W.3d at 341.  When the trial court
refuses to submit a requested instruction, the question on appeal is whether
the requested instruction was reasonably necessary to enable the jury to render
a proper verdict.  Tex. Workers' Comp.
Ins. Fund v. Mandlbauer, 34 S.W.3d 909, 912 (Tex. 2000) (per curiam);
see Tex. R. Civ. P. 277.  A party is entitled to a jury question,
instruction, or definition if the pleadings and evidence raise an issue.  Tex.
R. Civ. P. 278; Union Pac.
R.R. Co. v. Williams, 85 S.W.3d 162, 166 (Tex. 2002).  This is a substantive, non‑discretionary
directive to trial courts, requiring them to submit requested questions to the
jury if the pleadings and any evidence support them.  Elbaor v. Smith, 845 S.W.2d 240, 243
(Tex. 1992).  To determine if the failure
to submit a requested instruction is error, the reviewing court must consider
the pleadings, trial evidence, and the entire charge.  See Island Recreational Dev. Corp. v.
Republic of Tex. Sav. Ass'n, 710 S.W.2d 551, 555 (Tex. 1986) (op. on
reh'g); see also Tex. R. App. P. 44.1(a)(1).  An incorrect jury instruction is only grounds
for reversal if it probably caused the rendition of an improper judgment.  Tex.
R. App. P. 44.1(a)(1); Louisiana‑Pacific
Corp. v. Knighten, 976 S.W.2d 674, 675‑76 (Tex. 1998) (per curiam).

B.  "New and Independent Cause"
Instruction[2]








When defendants blame
an occurrence on someone or something other than themselves, the Texas Pattern
Jury Charges provide multiple alternatives. 
Dillard v. Tex. Elec. Coop., 157 S.W.3d 429, 432 (Tex. 2005).  The purpose of these instructions is to
advise the jurors, in the appropriate case, that they do not have to place
blame on a party to the suit if the evidence shows that the conduct of some
person not a party to the litigation caused the occurrence in question.  See id. (citing Reinhart v.
Young, 906 S.W.2d 471, 472 (Tex. 1995)). 
One of the alternatives involves a new‑and‑independent‑cause
instruction if the occurrence is later caused by someone else.  See id. (citing State Bar
Of Texas, Texas Pattern Jury Charges PJC
3.1 (1987)). "'New and independent cause' means the act or omission of a
separate and independent agency, not reasonably foreseeable, that destroys the
causal connection, if any, between the act or omission inquired about and the
occurrence in question and thereby becomes the immediate cause of the
occurrence."  Dillard, 157
S.W.3d at 432 n.3; Phan Son Van v. Pena, 990 S.W.2d 751, 754 (Tex. 1999)
(adopting the factors to determine whether an act is a concurring or new and
independent cause);[3]
Taylor v. Carley, 158 S.W.3d 1, 9 (Tex. App.BHouston [14th Dist.] 2004, pet. filed).  Texas courts distinguish between a new and
independent cause and a concurrent act.  Taylor,
158 S.W.3d at 9 (citing Benitz v. Gould Group, 27 S.W.3d 109, 116 (Tex.
App.BSan Antonio 2000, no
pet.))  A concurrent act cooperates with
the original act in bringing about the injury and does not cut off the
liability of the original actor.  Id.
 A "new and independent
cause," sometimes referred to as a superseding cause, however, is an act
or omission of a separate and independent agency that destroys the causal
connection between the negligent act or omission of the defendant and the
injury complained of, and thereby becomes the immediate cause of such
injury.  Id.  The issue of new and independent cause is a
component of the ultimate issue of proximate cause and not an affirmative
defense.  Id. (citing Rodriguez
v. Moerbe, 963 S.W.2d 808, 821 n.12 (Tex. App.BSan Antonio 1998, pet.
denied)).








The instructions on
new and independent cause and sole proximate cause can cover much of the same
territory.  Dillard, 157 S.W.3d at
434.  However, such redundancy is
contrary to the spirit of broad‑form submission.  Id. (citing Lemos v. Montez,
680 S.W.2d 798, 801 (Tex. 1984)).  The
supreme court's adoption of broad‑form jury submissions was intended to
simplify jury charges for the benefit of the jury, the parties, and the trial
court.  Romero v. KPH Consol., Inc.,
166 S.W.3d 212, 230 (Tex. 2005).  It was
certainly never intended to permit, and therefore encourage, more error in a
jury charge.  Id.  When properly utilized, broad‑form
submission can simplify charge conferences and provide more comprehensible
questions for the jury.  See id. at
50-51.  However, it is not always
practicable to submit every issue in a case broadly, and broad‑form
submission cannot be used to broaden the harmless error rule to deny a party
the correct charge to which it would otherwise be entitled.  Id.

C.  Refusal to Instruct








I first address
whether the failure to instruct is error. 
See Romero, 166 S.W.3d at 227; Wright Way Constr. Co. v.
Harlingen Mall Co., 799 S.W.2d 415, 422 (Tex. App.BCorpus Christi 1990,
no writ).  When evaluating whether a
party is entitled to a jury instruction, the reviewing court must examine the
record for evidence supporting submission of the instruction and ignore
evidence to the contrary.  See Elbaor,
845 S.W.2d at 243.  The Hospital asserts
that Mrs. Hawley's treating physician and surgeon failed to timely access the
pathology report in her hospital chart, and, thus, their failure operated
independently of any situation allegedly created by the hospital.  The Hawleys counter that an instruction was
properly denied because a superseding cause requires that an event must be
unforeseeable and that the effect of the hospital's negligence must have
ceased, but the evidence supports neither element.  The Hawleys further state that, at most, the
evidence shows a concurring cause.  

Prior to her discharge
from the hospital after surgery, Mrs. Hawley's chart contained the pathology
report.  Her treating physician compiled
the discharge summary and did not reference the report in her chart which,
testimony showed, reflected the report was not read.  Testimony established that both the treating
physician and the surgeon had access to Mrs. Hawley's chart for purposes of
post-operative diagnosis and treatment. 
A return receipt establishes that the pathology report was mailed to and
received by the treating physician's office. 
No independent recollection of notice to the surgeon is evident;
however, testimony showed that the custom, habit, and practice was that the
distribution policy for positive cancer pathology reports was followed
"without exceptions."  By its
plain terms, the distribution policy does not require that notice be provided
orally, and by fax, and by certified mail. 
Without question, however, all pathology reports must be filed in the
patient's chart.  The evidence
unequivocally places the pathology report in Mrs. Hawley's chart prior to her
release from the hospital post-surgery. 








The crux of the
Hospital's argument is that, even if the Hospital complied with the
notice/distribution policy for a positive cancer pathology report, it is
unforeseeable that compliance itself would result in lack of notice to the
afflicted patient of the cancer diagnosis. 
Ample testimony established that two secretaries received twenty to
thirty requests daily from physicians' and surgeons' offices requesting
duplicate copies of pathology reports, after documented, full compliance with
the distribution policy.  Testimony
showed that it was often easier to request a new copy from the pathology
department than to locate the reports in a medical office.  In Mrs. Hawley's case, documentation showed
that the pathology report was sent to and received by the treating physician's
office by certified mail, return receipt requested.  The notice is consistent with one of the
transmittal methods provided for in the distribution policy made the basis of
the negligence claim.  Notice by
placement in Mrs. Hawley's chart is also consistent with the distribution
policy.  Even so, Mrs. Hawley was not
treated for cancer until approximately eleven months after it was initially
discovered by a pathologist. 








The discretion
afforded during the submission of instructions is not absolute. See Tex. R. Civ. P. 277.  The
substantive, non‑discretionary directive to trial courts requires them to
submit requested questions to the jury if the pleadings and any evidence
support them.  Elbaor, 845 S.W.2d
at 243.  After examining the pleadings,
the entire charge, and the evidence, I would hold that the evidence of new and
independent cause was fairly raised by the pleadings and the evidence and,
thus, was a fact issue for the jury to decide. 
See Tex. R. Civ. P. 278 ("The court shall
submit the questions, instructions and definitions in the form provided by Rule
277 which are raised by the written pleadings and the evidence.").  A litigant is entitled to have controlling
questions of fact submitted to the jury if they are supported by "some
evidence."[4]  Tex.
R. Civ. P. 278; Wright Way
Constr., 799 S.W.2d at 422 (citing  Moore
v. Lillebo, 722 S.W.2d 683, 686‑87 (Tex. 1986) (reversing for new
trial because trial court failed to submit requested issues that were supported
by some evidence)).  The pleadings and,
importantly, some evidence supported this issue.  See Wright Way Constr., 799 S.W.2d at
422.  Because the Hospital was entitled
to a requested jury instruction on new and independent cause, I would hold that
denial of the requested instruction is without regard to guiding
principles.  See Downer, 701
S.W.2d at 241‑42. 

D.  Harmful Error








I next address whether
the denial of the requested instruction is reversible error.  Tex.
R. App. P. 44.1(a); Romero ,
166 S.W3d at 230; Wright Way Constr., 799 S.W.2d at 422.  Rule 44.1(a) provides that error in the trial
court properly complained of requires reversal of the judgment on appeal if it
"(1) probably caused the rendition of an improper judgment; or (2)
probably prevented the appellant from properly presenting the case to the court
of appeals."  Tex. R. App. P. 44.1(a).  For an
instruction to be proper, it must (1) assist the jury, (2) accurately state the
law, and (3) be supported by the pleadings and evidence.  Tex.
R. Civ. P. 277, 278.  The court's charge contains an instruction on
proximate cause that includes, in part, "There may be more than one
proximate cause of any event."  The
issue of new and independent cause is a component of the ultimate issue of
proximate cause and not an affirmative defense. 
Taylor, 158 S.W.3d at 9. 
It is not always practicable to submit every issue in a case broadly, in
broad‑form submission.  Romero,
166 S.W.3d at 230.  The evidence in this
case supported the inclusion of the requested instruction.  The trial court's refusal to instruct on this
matter effectively directed a verdict upon it. 
See Wright Way Constr., 799 S.W.2d at 424.  Based on the evidence, the jury could have
found superseding cause.  The jury
verdict was against the proponent of the issue. 
Thus, the error was harmful. 
Accordingly, I  would hold that
the failure of the trial court to instruct on new and independent cause was
such a denial of the rights of the Hospital as was reasonably calculated to and
probably did cause the rendition of an improper verdict.  See id.  Harmful error almost certainly occurs if a
defendant who has properly requested an appropriate instruction on a
controlling defensive issue does not have that issue submitted to the jury.  Id.  That is precisely what occurred at trial.  Id. 
Accordingly, I would sustain the Hospital's fourth issue.  I would also reverse the judgment and remand
for a new trial.  See Tex. R. App. P. 43.2(d).

E.  Rendition or Remand








I am mindful that a
reversal and remand of the trial court's judgment does not dispose of the
issues in which appellant requests rendition of judgment.  See Wright Way Constr., 799 S.W.2d at
424.  Ordinarily, I would next consider
whether the judgment for the Hawleys can rest on the jury's finding of negligence.  See Romero, 166 S.W.3d at 230.  Although I would find reversible error
entitling the Hospital to a remand, I nonetheless pause to briefly consider the
seventh issue raised, because if the evidence presented was legally insufficient,
then the Hospital is entitled to a rendition in its favor.[5]
 See R & R Contractors, 88
S.W.3d at 706.  








By its seventh issue,
the Hospital asserts that the evidence is legally insufficient to support the
jury's finding of negligence in Question Number 1 as a matter of law.  The statement of the issue must be treated as
covering every subsidiary question that is fairly included.  See Tex.
R. App. P. 38.1(e).  In a sub-issue of the same issue, the
Hospital asserts that recovery is barred when a defendant's negligence deprived
the patient of only a fifty-percent or less chance of survival.  The Hawleys counter that, by its sub-issue,
the Hospital concedes negligence and challenges the finding of proximate cause
on the matter of probability of survival. 
Importantly, by its fifth issue, the Hospital asserts the trial court reversibly
erred by denying its requested instruction on lost chance of survival because
"some evidence existed that a less than 50% chance of survival existed at
the time of the alleged negligence."[6]  The crux of the Hospital's argument regarding
lost chance of survival on legal sufficiency and charge error grounds rests on
the trial court's proximate cause instruction, which I would hold necessitated
a further instruction.  The seventh issue
is the sole issue determinative of whether rendition is appropriate and is, by
force, somewhat negated by the conditional concession that "some evidence
existed" of lost chance of survival maintained in the Hospital's related
fifth issue.[7]  Based on the collateral legal sufficiency
challenges, coupled with finding reversible charge error, I would hold that the
erroneous jury charge prevents the Hospital from properly presenting the case
to this Court.[8]
 See Tex. R. App. P.
44.1(a).  Thus, I would  reverse and remand.  See Tex.
R. App. P. 43.2(d), 43.3(b).  Because the Hospital's remaining issues are
not dispositive, I need not address them. 
Tex. R. App. P. 47.1.








III.  Conclusion

I would sustain the
Hospital's fourth issue.  Because the
jury charge used in this case contained an error that probably caused the
rendition of an improper judgment, I would reverse the judgment and remand the
cause to the lower court for a new trial. 
                                                                                

ERRLINDA CASTILLO

Justice

 

Dissenting Opinion delivered and filed

this 23rd 
day of March, 2006.

 











[1] The physician reviewed the
pathology report contained in her medical records. 





[2] The Hawleys acknowledge that the
hospital's live (unstruck) pleading provided general notice of new and
independent cause.  





[3] Testimony showed that the time
differential from notice to treatment is critical in cancer cases.  Thus, it follows that the timing of notice
would correlate with the question of a different harm in the first factor in Phan
Son Van v. Pena, 990 S.W.2d 751, 754 (Tex. 1999).  Further, a trial court may not properly
refuse to submit a question merely because the evidence is factually
insufficient to support an affirmative finding. 
Garza v. Alviar, 395 S.W.2d 821, 824 (Tex. 1965).





[4] A controlling or ultimate issue is
one that presents to the jury a complete ground of recovery or defense.  Wright Way Constr. Co. v. Harlingen Mall
Co., 799 S.W.2d 415, 422 (Tex. App.BCorpus Christi 1990, no writ).





[5] By its ninth issue, the Hospital
asserts that it is entitled to rendition on the question of medical expenses
because the evidence does not show the expenses were reasonable and
necessary.  Under a proper measure‑of‑damages
instruction, a fact finder has the discretion to find damages within the range
of evidence presented at trial.  See
Gulf States Utils. Co. v. Low, 79 S.W.3d 561, 566 (Tex. 2002).  The trial court modified the jury's damage
award.  Even so, I would hold that this
issue is not dispositive of whether to remand or render.





[6] Texas does not recognize a common
law cause of action for lost chance of survival in a medical malpractice
case.  Park Place Hosp. v. Estate of
Milo, 909 S.W.2d 508, 511 (Tex. 1995) (citing  Kramer v. Lewisville Mem. Hosp., 858
S.W.2d 397, 407 (Tex. 1993).  There is no
liability for negligent medical treatment "that decreases a patient's
chance of avoiding death or other medical conditions in cases where the adverse
result probably would have occurred anyway."  Id. (citing Kramer, 858
S.W.2d at 398).





[7] An appellate court addresses legal-sufficiency
challenges as either "no-evidence" or "matter-of-law"
issues.  Gooch v. Am. Sling Co.,
902 S.W.2d 181, 183-84 (Tex. App.BFort Worth 1995, no
writ).  We analyze the issue as a
"no-evidence" challenge when the party complaining on appeal did not
bear the burden of proof at trial.  Id.
 When reviewing facts, the "final test for
legal sufficiency must always be whether the evidence at trial would enable
reasonable and fair‑minded people to reach the verdict under review.  Whether a reviewing court begins by
considering all the evidence or only the evidence supporting the verdict, legal‑sufficiency
review in the proper light must credit favorable evidence if reasonable jurors
could, and disregard contrary evidence unless reasonable jurors could
not."  City of Keller v. Wilson,
168 S.W.3d 802, 827 (Tex. 2005).  We will
review the evidence "in the light most favorable to the verdict,
disregarding all contrary evidence that a reasonable jury could have
disbelieved."  Ysleta Indep. Sch.
Dist. v. Monarrez, 177 S.W.3d 915, 916 (Tex. 2005) (per curiam).  If the evidence presented at trial would
permit reasonable and fair-minded people to differ in their conclusions, then
jurors must be allowed to do so.  Keller,
168 S.W.3d at 822.  "A reviewing
court cannot substitute its judgment for that of the trier-of-fact, so long as
the evidence falls within this zone of reasonable disagreement."  Id. 





[8] The ultimate standard of proof on
the causation issue "is whether, by a preponderance of the evidence, the
negligent act or omission is shown to be a substantial factor in bringing about
the harm and without which the harm would not have occurred."  Park Place Hosp., 909 S.W.2d at 511
(citing Kramer, 858 S.W.2d at 400). 
Thus, recovery is barred when the defendants' negligence deprived the
patient of only a fifty percent or less chance of survival. Id.