**A. DOE and B. Doe, As Next Friends of C. Doe, a Minor Child, et al., Appellants,**

v.

**MOBILE VIDEO TAPES, INC., d/b/a KRGV–TV, Raymond Alexander, and Rick Diaz, Appellees.**

**No. 13–97–896–CV.**

Court of Appeals of Texas, Corpus Christi.

Feb. 15, 2001.

Rehearing Overruled April 26, 2001.

Kevin W. Grillo, Hilliard, Grillo & Munoz, Corpus Christi, for appellants.

Valorie C. Glass, Lisa D. Powell, Rex N. Leach, Atlas & Hall, L.L.P., McAllen, for appellees.

Before Justices DORSEY, HINOJOSA, and RODRIGUEZ.

## OPINION

Opinion by Justice HINOJOSA.

This is an appeal from a summary judgment granted against appellants, D. Doe, F. Doe, H. Doe, I. Doe, and S. Doe,[1] minor children, and their parents as their next friends ("summary judgment appellants"). It is also an appeal of a judgment rendered after a jury trial against appellants, C. Doe and E. Doe, minor children, and their parents as their next friends ("trial appellants"). The Does and their parents sued appellees, Mobile Video Tapes, Inc. d/b/a KRGV–TV ("KRGV"), Raymond Alexander, general manager of KRGV, and Rick Diaz, news director of KRGV, for libel, invasion of privacy, and intentional infliction of emotional distress. Appellants' claims stem from false statements allegedly made regarding a clandestinely made videotape as well as the broadcast of the videotape during newscasts on KRGV. By one point of error, the summary judgment appellants contend the trial court erred in granting appellees' motion for summary judgment. By four points of error, the trial appellants claim jury charge, evidentiary, and factual sufficiency errors. We affirm.

### A. BACKGROUND

Port Isabel High School band director, Joe Martinez, placed a clandestine video camera in an area where female students changed clothes for band practice. He was attempting to discover who was going through students' belongings and stealing. Some of the videotapes made by the band director were discovered in a garbage dumpster in Brownsville. The anonymous finder played the videotapes and discovered they contained scenes of the director adjusting or turning off the camera, the assistant band director, Eugene Catrell, going through student purses and other belongings, and female students changing clothes. The finder gave the videotapes to KRGV on October 8, 1995.

During the morning of October 9, 1995, parents of the students were notified by others in the community who had seen the videotapes that their daughters had been videotaped while changing clothes. Some parents were told the videotapes were in KRGV's possession and called the television station to ask that the videotapes not be aired on its newscasts. On the evening of October 9, 1995, KRGV played segments of the videotapes clearly showing the band director adjusting the camera and the assistant band director rifling through student belongings. The seg-

---

1. As the principal parties in this case are minors, the trial court designated each plaintiff and her parents with the letter designa-tions referenced in this opinion. The Does do not appear to be related.

ments shown also included distorted images of some students changing clothes. Although the students were not identified by their names or addresses, they were described as students changing for band and cheerleading practice. Segments of the videotapes were shown on various other occasions when there were developments in the story (e.g. when the band officials were suspended and terminated, and during the Cameron County District Attorney's investigation).

Appellants filed suit alleging invasion of privacy for public disclosure of embarrassing private facts, invasion of privacy for intrusion into their solitude or private affairs, invasion of privacy by appropriation of their likenesses for appellees' advantage, defamation, defamation *per se*, and intentional infliction of emotional distress. Appellees generally denied the allegations and asserted as affirmative defenses: (1) privilege under section 73.002 of the Texas Civil Practice and Remedies Code, (2) limitations, (3) no broadcast of any identifiable or graphical likenesses, (4) no publication of private facts, (5) no false or defamatory statements, (6) no outrageous conduct, (7) legitimate public concern, and (8) any harm was caused by the conduct of others not in appellees' control.

Appellees initially filed a motion for summary judgment against all the defendants, but it was denied. Appellees then moved for summary judgment against the minor children D. Doe, F. Doe, H. Doe, I. Doe, and S. Doe and their parents as their next friends. Appellees claimed that KRGV never broadcast the graphic images, distorted or otherwise, of the minor children D. Doe, F. Doe, H. Doe, I. Doe, and S. Doe. The summary judgment evidence showed that H. Doe was on the videotape segment that was broadcast by KRGV, but she was fully dressed. D. Doe, F. Doe, I. Doe, and S. Doe and/or their parents admitted in deposition testimony that while they may have been in the original videotape, they were not in the distorted version that was broadcast by KRGV. The trial court granted this motion on September 15, 1997, just before jury selection began in the case.

The remaining minor children, C. Doe and E. Doe, and their parents as their next friends, tried their case to a jury. The jury found no libel and no invasion of privacy, and the trial court rendered a take-nothing judgment against them.

Appellants now challenge both judgments. We consider the summary judgment first.

### B. SUMMARY JUDGMENT

In point of error number one, the summary judgment appellants contend the trial court erred by granting appellees' motion for summary judgment against them. Specifically, they claim the trial court erred in granting summary judgment as to their claims for defamation, invasion of privacy by disclosure of private facts, invasion of privacy by intrusion, and intentional infliction of emotional distress.

■■■ The proper inquiry on appeal is whether the defendant, in seeking summary judgment, fulfilled his initial burden to: (1) establish as a matter of law that there remains no genuine issue of material fact as to one or more essential elements of the plaintiff's cause of action, or (2) establish his affirmative defense to the plaintiff's cause of action as a matter of law. *Casso v. Brand*, 776 S.W.2d 551, 556 (Tex.1989); *Nixon v. Mr. Property Management Co.*, 690 S.W.2d 546, 548–49 (Tex. 1985); *Swilley v. Hughes*, 488 S.W.2d 64, 67 (Tex.1972). In deciding whether there is a disputed material fact issue precluding summary judgment, evidence favorable to the non-movant must be taken as true.

*Star–Telegram, Inc. v. Doe,* 915 S.W.2d 471, 474 (Tex.1995); *Nixon,* 690 S.W.2d at 549. Every reasonable inference must be indulged in favor of the non-movant and any doubts resolved in his favor. *Nixon,* 690 S.W.2d at 549. Where the trial court does not specify on what ground it granted summary judgment, the appellant must argue that every ground in the summary judgment motion is without merit. *Star–Telegram, Inc.,* 915 S.W.2d at 473. The appellate court must affirm if any one of the movant's theories on a particular issue has merit. *Id.*

■■■ Defamation is a false statement about a plaintiff published to a third person without legal excuse which damages the plaintiff's reputation. *Shearson Lehman Hutton, Inc. v. Tucker,* 806 S.W.2d 914, 921 (Tex.App.—Corpus Christi 1991, writ dism'd w.o.j.). Libel is defamation in written or other graphic form that tends to injure a person's reputation, exposing the person to public hatred, contempt, or ridicule. Tex.Civ.Prac. & Rem.Code Ann. § 73.001 (Vernon 1997). Slander is orally communicated defamation. *Randall's Food Mkt., Inc. v. Johnson,* 891 S.W.2d 640, 646 (Tex.1995).

■■■ A cause of action for public disclosure of private facts exists when a person gives publicity to matters concerning a plaintiff's personal life that would be highly offensive to a reasonable person of ordinary sensibilities and the matter publicized is not of legitimate concern to the public. *Star–Telegram, Inc.,* 915 S.W.2d at 474. The possible commission of a crime and the resulting consequences are events of legitimate public concern. *See Cox Broad. Corp. v. Cohn,* 420 U.S. 469, 492, 95 S.Ct. 1029, 43 L.Ed.2d 328 (1975).

■■■ The elements of invasion of privacy by intrusion are: (1) intentionally intruding (2) upon the solitude of another or his private affairs (3) which is highly offensive to a reasonable person. *Gill v. Snow,* 644 S.W.2d 222, 223–24 (Tex.App.—Fort Worth 1982, no writ), *overruled on other grounds by Cain v. Hearst Corp.,* 878 S.W.2d 577 (Tex.1994). Additionally, courts have required that the intrusion be unreasonable, unjustified, or unwarranted. *Billings v. Atkinson,* 489 S.W.2d 858, 860 (Tex.1973); *Farrington v. Sysco Food Servs., Inc.,* 865 S.W.2d 247, 253 (Tex. App.—Houston [1st Dist.] 1993, writ denied).

■■■ To recover for intentional infliction of emotional distress, a plaintiff must establish that: (1) the defendant acted intentionally or recklessly, (2) the conduct was extreme and outrageous, (3) the actions of the defendant caused the plaintiff emotional distress, and (4) the resulting emotional distress was severe. *Wornick v. Casas,* 856 S.W.2d 732, 734 (Tex. 1993). The defendant's conduct must exceed all possible bounds of decency and be utterly intolerable in a civilized community. *Id.* at 735.

Appellees moved for summary judgment on the grounds that: (1) no graphic likeness of any summary judgment appellant was ever broadcast on KRGV; (2) no private facts identifying any summary judgment appellant was ever published by KRGV; (3) any facts published regarding the band director's actions were of legitimate public concern; (4) KRGV did not publish false or defamatory statements regarding any summary judgment appellant; and (5) KRGV committed no outrageous conduct with regard to any summary judgment appellant. Appellees also contended their actions were protected under the First and Fourteenth Amendments to the U.S. Constitution and by Article 1, § 8 of the Texas Constitution.

In support of these grounds, appellees included as summary judgment evidence the affidavit of Rick Diaz, the television transcripts of the pertinent broadcasts, and excerpts from the deposition testimony of the summary judgment appellants and one parent. The summary judgment evidence shows that the graphic images, distorted or otherwise, of the Does named in the motion for summary judgment were never broadcast by KRGV. Regarding the girls who were actually shown in the broadcast, the summary judgment evidence shows that KRGV, Alexander, and Diaz did not broadcast the names and addresses of the students videotaped by the band director, and other than saying the students were changing for band and cheerleading practice, no other facts were given.

In response to the motion for summary judgment, appellants presented summary judgment evidence that H. Doe was on the videotape segment broadcast by KRGV, but she was fully dressed. The other Does and/or their parents admitted in their deposition testimony that while they may have been in the original videotape, they were not in KRGV's distorted version. Because each cause of action alleged by the summary judgment appellants requires appellees' actions be about or directed at appellants and because the evidence shows KRGV did not broadcast their images in any state of undress or name them as persons taped by the band director, we conclude summary judgment was proper as to all summary judgment appellants' claims.

Accordingly, we hold the trial court did not err in granting appellees' motion for summary judgment against the minor children D. Doe, F. Doe, H. Doe, I. Doe, and S. Doe and their parents as their next friends. We overrule appellants' point of error number one.

## C. JUDGMENT AFTER JURY TRIAL

### 1. *Libel*

In point of error number two, the trial appellants complain the trial court erred by failing to submit a jury question on the negligence standard of liability for libel. They assert appellees were negligent in broadcasting false statements about appellants. Specifically, they contend that appellees' use of statements like "Naked Tapes" in the broadcasts implied improper and immoral acts by appellants.

Appellees contend the trial appellants have waived this complaint because appellants' counsel stated at the charge conference that "they don't have any objections to [the libel] issue as it is phrased." At trial, in presenting his objections to the court's charge, appellants' counsel stated:

> Appellants' counsel: First, with regard to the charge not having any instructions as to negligence, ordinary care or proximate care, plaintiffs would object to the charge because it doesn't have those definitions.

> \*        \*        \*        \*        \*        \*

> Appellants' counsel: Within Exhibit 6, we submit a question No. 10 which says: Defendants negligently libeled plaintiffs [C. Doe] and [E. Doe], in the instructions. We would request that be submitted along with the appropriate negligence instructions which are included in Exhibit No. 6.

> The Court: Denied.

> Appellants' counsel: With regard to question No. 2, that's part of the court's proposed charge: "Did the defendants libel any of the plaintiffs listed below?" Plaintiffs don't have any objections to that issue as it is phrased.

■ To preserve charge error, an appellant must comply with Texas Rules of Civil Procedure 271–279. A party objecting to a jury charge must point out distinctly the objectionable matter and the grounds of the objection. *Wilgus v. Bond*, 730 S.W.2d 670, 671 (Tex.1987). Any complaint to a question, definition, or instruction, on account of any defect, omission, or fault in pleading, is waived unless specifically included in the objections. Tex. R.Civ.P. 274. When no one objects to the omission of an element from the jury charge, an appellate court will deem a finding in support of the judgment if some evidence supports the finding. *Ramos v. Frito–Lay, Inc.*, 784 S.W.2d 667, 668 (Tex. 1990). An objection alone is sufficient to preserve error of the court's failure to submit a jury question relied upon by the opposing party. *Diamond Shamrock Refining v. Mendez*, 809 S.W.2d 514, 521 (Tex.App.—San Antonio 1991), *rev'd in part on other grounds and aff'd. in part*, 844 S.W.2d 198 (Tex.1992); *see* Tex. R.Civ.P. 278. Complaints regarding omitted instructions are waived unless the complaining party requests and tenders a substantially correct instruction in writing. *National Fire Ins. v. Valero Energy*, 777 S.W.2d 501, 507 (Tex.App.—Corpus Christi 1989, writ denied); *see* Tex.R.Civ.P. 278.

■ Courts have insisted that whether or not a party tenders a correct issue, he must first object to the defect in the court's charge.

Objections to the charge and requests for submission of issues are not alternatively permissible methods of complaining of the charge, and a request for another charge is not a substitute for an objection. When a defectively framed special issue is contained in the court's proposed charge, the tender of a correct issue does not preserve error.

*Hernandez v. Montgomery Ward & Co.*, 652 S.W.2d 923, 925 (Tex.1983); *Johnson v. State Farm Mut. Auto. Ins.*, 762 S.W.2d 267, 270 (Tex.App.—San Antonio 1988, writ denied). Finally, a party violates Texas Rule of Civil Procedure 274 by making voluminous objections which obscure or conceal the objection serving to preserve the issue being complained of on appeal. *See Baker Material Handling Corp. v. Cummings*, 692 S.W.2d 142, 145 (Tex.App.—Dallas 1985), *writ dism'd by agr.*, 713 S.W.2d 96 (Tex.1986); *see* Tex. R.Civ.P. 274.

The Texas Supreme Court discussed charge error preservation in *State Dept. of Highways & Pub. Transp. v. Payne*, 838 S.W.2d 235 (Tex.1992) (op. on reh'g). The supreme court stated it did not revise the rules of civil procedure in opinions but added:

There should be but one test for determining if a party has preserved error in the jury charge, and that is whether the party made the trial aware of the complaint, timely and plainly, and obtained a ruling. The more specific requirements of the rules should be applied, while they remain, to serve rather than defeat this principle.

*Id.* at 241.

■ At the charge conference, the trial appellants made numerous objections to the proposed charge and requested special instructions. They objected to the lack of an issue on the negligence standard of liability for libel, argued this objection before the court, and ·tendered a written issue. We conclude that error, if any, has been preserved for review.

■ The standard for review of a jury charge is abuse of discretion. *Texas Dept. of Human Servs. v. E.B.*, 802 S.W.2d 647, 649 (Tex.1990). A trial court abuses its discretion if it acts arbitrarily, unrea-

sonably, or without reference to any guiding principles. *Downer v. Aquamarine Operators, Inc.*, 701 S.W.2d 238, 242 (Tex. 1985).

The trial court has broad discretion in framing issues for the jury, subject only to the limitation that controlling issues of fact must be submitted to the jury. *Wright Way Constr. Co. v. Harlingen Mall Co.*, 799 S.W.2d 415, 422 (Tex. App.—Corpus Christi 1990, writ denied). Controlling issues may be submitted to the jury by questions, instructions, definitions, or through a combination thereof. Tex. R.Civ.P. 278; *Wright Way Constr. Co.*, 799 S.W.2d at 422.

Fault is a constitutional prerequisite for defamation liability. *See Gertz v. Robert Welch, Inc.*, 418 U.S. 323, 347, 94 S.Ct. 2997, 41 L.Ed.2d 789 (1974) ("so long as they do not impose liability without fault, the States may define for themselves the appropriate standard of liability for a publisher or broadcaster of defamatory falsehood injurious to a private individual"). The Texas Supreme Court has adopted a negligence standard in defamation cases by non-public figures against broadcasters. *Foster v. Laredo Newspapers, Inc.*, 541 S.W.2d 809, 819–20 (Tex. 1976); *see also WFAA–TV, Inc. v. McLemore*, 978 S.W.2d 568, 571 (Tex.1998); *A.H. Belo Corp. v. Rayzor*, 644 S.W.2d 71 (Tex.App.—Fort Worth 1982, writ ref'd n.r.e.). In *Foster*, the court stated:

> We hold that a private individual may recover damages from a publisher or broadcaster of a defamatory falsehood as compensation for actual injury upon a showing that the publisher or broadcaster knew or should have known that the defamatory statement was false. In addition, the liability of a publisher or broadcaster of a defamatory falsehood about a private individual may not be predicated upon a factual misstatement whose content (would) not warn a reasonably prudent editor or broadcaster of its defamatory potential.
>
> The negligence standard of liability coupled with the "actual injury" requirement ... provides a useful beginning point for the development of constitutional defamation law....

*Foster*, 541 S.W.2d at 819–20.

Given the standard set forth in *Foster*, we hold the trial court abused its discretion by not instructing the jury on the negligence standard of liability for defamation and/or libel. We now must determine whether the error was harmful under Texas Rule of Appellate Procedure 44.1.

To determine whether an alleged error in the jury charge is reversible, we consider the pleadings of the parties, the evidence presented at trial, and the charge in its entirety, and we reverse the trial court only when the error in the charge amounted to such a denial of the rights of the complaining party that it probably caused the rendition of an improper judgment. Tex.R.App.P. 44.1; *see Island Recreational Dev. Corp. v. Republic of Tex. Sav. Ass'n.*, 710 S.W.2d 551, 555 (Tex. 1986).

In their First Supplement to their Second Amended Petition, the trial appellants cite *Foster* and state:

> a negligence standard of liability exists for defamation in Texas. Plaintiffs believe by pleading libel and/or defamation they have established a pleading for negligence. However, to further clarify their pleadings, Plaintiffs would plead that Defendants owed a duty to them not to make defamatory and/or false statements, that duty was violated and such violation of the duty was a proximate cause of damages to Plaintiffs described herein. Accordingly, Plaintiffs

would specifically state that the Defendants were negligent in their actions in broadcasting the videotape and making false and defamatory statements regarding the people contained in the videotape that was both broadcast and not broadcast and such breach of duty was a proximate cause of damages complained of by Plaintiffs in this case.

At trial, various witnesses testified that appellees promoted the news story with captions like "Naked Tapes at 5:00" and headlines with the words "Naked Tapes."

Question two of the charge instructed the jury regarding libel and asked the following question:

Did Defendants libel any of the Plaintiffs listed below?

You are instructed that "libel" is a defamation expressed in ·written or graphic form that tends to injure a living person's reputation and thereby expose that person to public hatred, contempt or ridicule or to impeach any person's honesty, integrity, virtue or reputation.

You are instructed that "defamation" is a written communication, published to a third person, that harms or otherwise impugns the reputation of the Plaintiff.

You are instructed that in order to find libel, the libel must refer to some ascertained or ascertainable person, and that person must be the Plaintiff. A Plaintiff is not necessarily precluded from recovery simply because he or she is not specifically named in a defamatory statement. Sufficient identification has been made as long as those who know and are acquainted with the Plaintiff would understand from a communication that it referred to the Plaintiff.

Answer "Yes" or "No" as to each of the Plaintiffs

[C. Doe]: _____

[E. Doe]: _____

While the court erred in failing to instruct the jury on the negligence standard of liability for libel, we conclude the error was harmless. The court's question concerning libel was correctly submitted, but a further question should have been asked. The jury should have been told that if it found the trial appellants were libeled, then it needed to determine whether the libel was negligently committed. The trial appellants' proposed question would have adequately served this purpose. Appellants' proposed question stated:

[If you answered yes to Question 2:]

Did Defendants negligently libel Plaintiffs?

Answer "Yes" or "No" as to each of the Plaintiffs:

[C. Doe]: _____

[E. Doe]: _____

You are instructed that "negligence" means a failure to use ordinary care, that is, failure to do that which a person of ordinary prudence would have done under the same or similar circumstances or doing that which a person of ordinary prudence would not have done under the same or similar circumstances.

You are instructed that "ordinary care" means that degree of care that a person of ordinary prudence would use under the same or similar circumstances.

You are instructed that "libel" is a defamation expressed in written or graphic form that tends to injure a living person's reputation and thereby expose that person to public hatred, contempt or ridicule or to impeach any person's honesty, integrity, virtue or reputation.

You are instructed that "defamation" is a communication, written or spoken, that harms or otherwise impugns the reputation of the Plaintiff.

You are instructed that in order to find libel, the libel must refer to some ascertained or ascertainable person, and that person must be the Plaintiff. A Plaintiff is not necessarily precluded from recovery simply because he or she is not specifically named in a defamatory statement. Sufficient identification has been made as long as those who know and are acquainted with the Plaintiff would understand from a communication that it referred to the Plaintiff.

The jury answered "no" to the libel question. Thus, the omission of the libel question based on negligence did not cause the rendition of an improper judgment because the jury would not have considered the question, even if it had been present in the charge. We hold the trial court's exclusion of a question based on a negligence standard of liability for libel was harmless error. We overrule appellants' point of error number two.

### 2. Negligent Invasion of Privacy

In point of error number three, the trial appellants contend the trial court abused its discretion by failing to submit a jury issue applying a negligent standard of liability to their claim of invasion of privacy by public disclosure of private facts.

■ Appellees allege the trial appellants have waived their complaint to the charge. At trial, in presenting his objections to the court's charge, appellants' counsel stated:

Appellants' counsel: That's correct, Your Honor, with regard to the way it is phrased now. Plaintiffs don't have any objection to Question No. 1.

Plaintiffs would object to the charge in total, though, because we would request that the court submit an issue as to negligent invasion of privacy, and that is based on the language of *Boyles v. Kerr* in the intermediate

appellate decision which says that there is a negligent cause of action—I mean, invasion of privacy can be done by negligence as well as intentional.

\* \* \* \* \* \*

Appellants' counsel: Also included is question No. 12: Did defendants negligently invade the privacy of plaintiffs by disclosure of private facts? And we would request the court give that instruction also.

The Court: Refused.

At the charge conference, the trial appellants objected to the lack of an instruction on negligent invasion of privacy. While appellants did not disagree with the submission concerning invasion of privacy, they did contend that a further instruction on negligent invasion of privacy needed to be submitted, and they submitted a written instruction. We conclude that error, if any, has been preserved for our review.

■ The trial appellants argue that since the supreme court has adopted a negligence standard for libel in *Foster*, it would be logical to apply the same standard to invasion of privacy. Appellants assert that appellees "knew or should have known that by airing the videotape, that friends of the trial appellants would recognize them and it would be highly offensive to air such a videotape to persons of ordinary sensibilities." Appellants further argue that because the evidence raised a fact issue regarding negligent invasion of privacy by disclosure of private facts, the trial court should have submitted a jury question regarding this claim. We disagree.

■ Invasion of privacy is an intentional tort. *Billings v. Atkinson*, 489 S.W.2d 858, 860–61 (Tex.1973). It is unclear whether negligent invasion of privacy is a recognized cause of action in Texas. *See Harper v. Newton*, 910 S.W.2d 9, 13 (Tex.

App.—Waco 1995), *rev'd on other grounds,* *Dallas County v. Harper,* 913 S.W.2d 207 (Tex.1995) (stating "we do not hold that Texas recognizes a cause of action for negligent invasion of privacy. We believe that the existence of this cause of action is an open question."); *Childers v. A.S.,* 909 S.W.2d 282, 291 (Tex.App.—Fort Worth 1995, no writ) (declining to adopt a negligent invasion of privacy cause of action because an individual should not be able to recover for intentional conduct under a negligence theory). *But see Boyles v. Kerr,* 806 S.W.2d 255, 259 (Tex.App.—Texarkana 1991), *rev'd on other grounds,* 855 S.W.2d 593 (Tex.1993) (op. on reh'g) (recognizing that "the right to compensation for a recognized tortious injury should not depend upon whether it is inflicted for the purpose of harming the injured party or negligently inflicted with the likelihood of harming the injured party. Thus, the basis for liability in a privacy action may rest upon a negligent, as well as an intentional, invasion.");[2] *C.T.W. v. B.C.G.,* 809 S.W.2d 788, 796 (Tex.App.—Beaumont 1991, no writ) (holding that an intrusion or violation of personal privacy can be brought about negligently and intentionally).

∎ Although some courts in Texas recognize negligent invasion of privacy, we decline to adopt a negligent invasion of privacy cause of action. We agree with the Fort Worth Court of Appeals that invasion of privacy has been recognized as an intentional tort and "appellant should not be able to recover for intentional conduct under a negligence theory." *See Childers,* 909 S.W.2d at 291 (citing *Fulmer v. Rider,* 635 S.W.2d 875, 881 (Tex.App.—Tyler 1982, writ ref'd n.r.e.) and *National Union Fire Ins. Co. v. Bourn,* 441 S.W.2d 592, 596 (Tex.Civ.App.—Fort Worth 1969, writ ref'd n.r.e.), for the contention that where the evidence proves an intentional injury, negligence issues should not be given). We hold the trial court did not abuse its discretion by not submitting a jury question applying a negligent standard of liability to the trial appellants' claim of invasion of privacy. We overrule appellants' point of error number three.

### 3. *Submission of Evidence*

In point of error number four, the trial appellants contend the trial court abused its discretion by allowing into evidence portions of the broadcasts in question. Appellants argue that since the actual broadcasts, which would have contained the alleged references to "Naked Tapes" and "Naked Cheerleaders," were destroyed, the trial court should have excluded the scripts and portions of the broadcasts offered by appellees.

∎ The admission and exclusion of evidence is committed to the trial court's sound discretion. *Gee v. Liberty Mut. Fire Ins. Co.,* 765 S.W.2d 394, 396 (Tex. 1989). A trial court abuses its discretion when it acts without regard for any guiding rules or principles. *City of Browns-*

---

2. In *Boyles v. Kerr,* the issue of negligent invasion of privacy was never submitted to the jury. Kerr originally sued alleging intentional invasion of privacy, negligent invasion of privacy, and negligent infliction of emotional distress. Kerr abandoned the theories of negligent invasion of privacy and intentional invasion of privacy prior to submission of the case to the jury. The court of appeals affirmed the judgment against Boyles concluding that Kerr established negligent infliction of emotional distress. The court further affirmed based on negligent invasion of privacy even though Kerr abandoned this theory prior to submission of the case to the jury. The supreme court did not address negligent invasion of privacy because Kerr had waived the issue. *Boyles v. Kerr,* 855 S.W.2d 593, 601 (Tex.1993).

*ville v. Alvarado,* 897 S.W.2d 750, 754 (Tex.1995); *Downer,* 701 S.W.2d at 241–42.

■ To obtain reversal of a judgment based on error in the admission or exclusion of evidence, appellant must show that the trial court did in fact commit error, and that the error probably caused the rendition of an improper judgment. TEX. R.APP.P. 44.1(a)(1); *McCraw v. Maris,* 828 S.W.2d 756, 758 (Tex.1992); *Gee,* 765 S.W.2d at 396; *Downen v. Texas Gulf Shrimp Co.,* 846 S.W.2d 506, 512 (Tex. App.—Corpus Christi 1993, writ denied).

■ At trial, various aspects of the broadcasts were admitted into evidence. To understand the trial appellants' contention, it is necessary to detail the records kept by appellees and the various components of the broadcasts. The record reflects that:

(1) KRGV keeps a rundown of the broadcast that shows how the newscast is set up, what stories are to be covered, and when the stories are to be covered within the broadcast.

(2) A script is kept that sets out what is said by the anchor and/or reporter.

(3) KRGV keeps reporter packages; these are videotapes used within the broadcast. These videotapes do not show the anchor or the lead-ins to the story, but rather, they are the videos that were aired during the story.

Each of these items were introduced into evidence for each of the broadcasts in question. The trial appellants argue that the above evidence, excluding the rundown, should not have been admitted because there is no record of the entire broadcasts. Diaz testified that the station tries to record the entire broadcast each day. He also stated that it is the regular practice of the station to keep the tape for only seven days, at which time the tape is reused and the broadcast is recorded over by another broadcast.

The trial appellants' main contention about the admission of these partial broadcasts is that there is no videotape of the anchor introducing the story and any graphics that were displayed. Appellants allege the graphics stated "Naked Tapes" and/or "Naked Truth Tapes."

The only indication of the use of the terms "Naked Tapes" or "Naked Truth Tapes" is on the script with the notation "SS: Naked Truth Tape." Appellees contend the use of the terms was only as a short, internal, un-aired story title. Diaz testified that SS means story slug. He said the notation on the script of "SS: Naked Truth Tape" indicates the possibility of a graphic and if there was a caption identification it would be "Naked Tapes." Diaz did not recall there being one, but admitted that a story slug does not always indicate the existence of a caption. He further testified that a story slug might be on the script, but not necessarily on the program. The only way to find out if there were graphics would be to view videotapes of the broadcasts in their entirety, which no longer exist.

a. Spoilation

The trial appellants contend that because of spoilation or destruction of the videotapes of the entire broadcasts by appellees, the portion of the broadcasts (*i.e.,* script and videos) should have been excluded. Appellants argue that without the videotapes of the entire broadcasts, the evidence was misleading and any probative value was outweighed by the prejudicial value. We disagree.

■ The evidence at trial established that there was a disagreement over whether the broadcasts were highlighted with captions like "Naked Tapes," "Naked

Cheerleaders," and "Naked Truth Tapes." The only way to affirm or negate the existence of these alleged captions would be to view the videotapes of the entire broadcasts. This is impossible because no such videotapes exist. It was established at trial that it is the regular business practice of KRGV to tape an entire broadcast, keep the recording for seven days, and then reuse the tape for subsequent broadcasts. Because of this practice, KRGV cannot submit into evidence recordings of the entire broadcasts in question.

■ The intentional spoilation of evidence raises a presumption that the evidence was unfavorable to the spoliator. *Brewer v. Dowling,* 862 S.W.2d 156, 159 (Tex.App.—Fort Worth 1993, writ denied). While it is true that appellees destroyed the videotapes, there is no evidence that they intentionally disposed of the tapes so as to make them unavailable for use at trial. Rather the evidence shows that appellees destroyed the videotapes in the ordinary course of business. Since the evidence was destroyed in the regular course of business, we hold appellees have adequately defended against an assertion of negligent or intentional destruction. *See Trevino v. Ortega,* 969 S.W.2d 950, 957 (Tex.1998) (Baker, J. concurring).

### b. Best Evidence Rule

■ The trial appellants contend that because of the best evidence rule[3] and the fact that appellees destroyed the videotapes of the full broadcasts, the reporter packages and scripts should not have been admitted. While it is true that the original videotapes of the broadcasts are not available because appellees destroyed them, the destruction was done in the regular course of business.

The relevant portions of Texas Rule of Evidence 1004 state: "The original is not required, and other evidence of the contents of a writing, recording, or photograph is admissible if: (a) All originals are lost or have been destroyed, unless proponent lost or destroyed them in bad faith; (b) No original can be obtained by any available judicial process or procedure." Tex.R.Evid. 1004(a), (b); *See Johnson v. State,* 846 S.W.2d 373, (Tex.App.—Houston [14th Dist.] 1992), *review granted in part, remanded in part, rehearing denied,* 853 S.W.2d 574, *on remand,* 857 S.W.2d 812 (purpose of best evidence rule is to allow admission of best obtainable evidence of document's contents, if document cannot as a practical matter be produced). We conclude the admission of the reporter packages, scripts, and rundowns provided the best evidence of the contents of the broadcasts because the actual broadcasts were destroyed in good faith. We hold the trial court did not abuse its discretion by admitting this evidence.

### c. Prejudicial and Misleading

The trial appellants further contend that admitting the portions of the reporter packages and scripts, without the captions "Naked Tapes" and "Naked Cheerleaders," was prejudicial and misleading. Appellants specifically argue that once appellees could "introduce their sanitized version, the jury only had the tapes and scripts which would support appellees' position not the complete broadcast."

■ Texas Rule of Evidence 403 provides that "although relevant, evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or

---

**3.** Texas Rule of Evidence 1002 states: "To prove the content of a writing, recording, or photograph, the original writing, recording, or photograph is required except as otherwise provided in these rules or by law." Tex.R.Evid. 1002.

misleading the jury, or by considerations of undue delay, or needless presentation of cumulative evidence." TEX.R.EVID. 403. Generally, relevant evidence should not be excluded without good cause. *Davis v. Davis*, 521 S.W.2d 603, 607 (Tex.1975). In weighing the probative value of evidence against the dangers of unfair prejudice, confusion of the issues, or misleading of the jury, the courts apply a balancing test. *Farr v. Wright*, 833 S.W.2d 597, 602 (Tex. App.—Corpus Christi 1992, writ denied); *Perez v. Baker Packers*, 694 S.W.2d 138 (Tex.App.—Houston [14th Dist.] 1985, writ ref'd n.r.e.). The trial court has wide latitude to exclude evidence if it creates undue prejudice, distracts the jury from the main issue or issues, if it consumes an undue amount of time, or if it unfairly surprises the proponent's adversary. *Charter Med. Corp. v. Miller*, 605 S.W.2d 943, 953 (Tex. Civ.App.—Dallas 1980, writ ref'd n.r.e.). The trial court's ruling will be upheld absent an abuse of discretion. *Sims v. Brackett*, 885 S.W.2d 450, 453 (Tex.App.— Corpus Christi 1994, writ denied); *New Braunfels Factory Outlet Ctr., Inc. v. IHOP Realty Corp.*, 872 S.W.2d 303, 310 (Tex.App.—Austin 1994, no writ).

■ We conclude that the trial appellants were not prejudiced and the jurors were not misled by the admission of the scripts and reporter packages in the absence of the videotapes of the full broadcasts. The videotapes of the entire broadcasts were not available for use at trial. Thus, the introduction of the scripts and reporter packages was the best way to show the jury the contents of the actual broadcasts. While the trial appellants contend the jury was not able to see the alleged captions, they were allowed to establish their position that appellees did use such captions as "Naked Tapes," "Naked Cheerleaders," and "Naked Truth Tapes." We conclude the trial appellants were not

prejudiced since they were able to fully assert and present testimony concerning their allegations of the captions. In the same manner, appellees were able to present evidence that the captions did not exist. The jury was free to judge the credibility of the witnesses and the testimony.

We hold the trial court did not abuse its discretion by admitting into evidence the scripts and reporter packages. We overrule appellants' point of error number four.

### D. FACTUAL SUFFICIENCY

In point of error number five, the trial appellants complain that the jury's answer of "no" to the issues of libel and invasion of privacy was so against the great weight and preponderance of the evidence that it is manifestly unjust. Appellants specifically contend that appellees' assertions that appellants were naked on the videotapes, and implications of improper motives by innuendo, were false and constituted libel and invasion of privacy.

■ When we review a factual sufficiency or "that the jury's finding was against the great weight and preponderance of the evidence" point, we examine the entire record. *Cain v. Bain*, 709 S.W.2d 175, 175 (Tex.1986); *Hickey v. Couchman*, 797 S.W.2d 103, 110 (Tex. App.—Corpus Christi 1990, writ denied). We review the evidence, keeping in mind that it is the jury's role, not ours, to judge the credibility of the evidence, to assign the weight to be given to testimony, and to resolve inconsistencies within or conflicts among the witnesses' testimony. *Corpus Christi Teachers Credit Union v. Hernandez*, 814 S.W.2d 195, 197 (Tex.App.—San Antonio 1991, no writ). We then set aside the verdict only if it is so contrary to the overwhelming weight and preponderance of the evidence as to be clearly wrong and

manifestly unjust. *Cain,* 709 S.W.2d at 176; *Hickey,* 797 S.W.2d at 110.

The trial appellants dispute the jury's answers to questions one and two. The first question asked the jury:

Do you find Defendants intentionally invaded the privacy of the following Plaintiffs by disclosure of private facts?

You are instructed that "invasion of privacy" by disclosure of private facts means intentional publication of private facts or aspects of a person's life, that the private facts or aspects of one's life are not of legitimate public concern and the publicity related to these aspects or facts is highly offensive to a reasonable person of ordinary sensitivities.

Answer "Yes" or "No" as to each of the Plaintiffs

[C. Doe]: ⎯⎯⎯⎯⎯⎯

[E. Doe]: ⎯⎯⎯⎯⎯⎯

As we stated previously, question two asked the jury "Did Defendants libel any of the Plaintiffs listed below?" In both questions, the jury answered "no" to each plaintiff.

### 1. Libel

The trial appellants' complain the evidence is insufficient to support the jury's verdict. They contend the jury should have found libel because appellees claimed appellants were naked on the videotapes. Appellants assert appellees' claim was false and constitutes libel.

■■■ At trial, the jury heard evidence from both sides that:

(1) There may or may not have been captions that used the terms "Naked Tapes," "Naked Cheerleaders," or "Naked Truth Tapes."

(2) The videotapes showing students changing clothes were made by school personnel at the high school attended by appellants.

(3) Appellees distorted the images of the students on the videotape before the videotape was used in the broadcasts.

(4) Appellees did not publish the names or addresses of the students in the videotapes.

(5) Recognition of the distorted images on the tape was questionable, even for those actually on the tape. Some students claimed they were on the tape, but were not. E. Doe testified that when she first saw the broadcast "[she] wasn't really sure at first [that it was her on the tape]." C. Doe testified that "[she] remember[ed] clearly seeing [herself], and [she] knew like where it was in the band hall." C. Doe further testified that beyond recognizing herself, she did not recognize everyone on the tape.

(6) E. Doe testified that she never heard the word "naked" used during any of the broadcasts.

(7) C. Doe and E. Doe received and heard various comments about the videotapes including: "Oh, I saw your striptease last night," "You made your TV debut last night," and "How does it feel to be on a porno tape."

(8) C. Doe and E. Doe both testified that the story was one that the public would want to know about and have an interest in and that the story about what happened was important and it was the type of story that should and could be reported by a TV station.

(9) When asked about the captions, Diaz testified:

Q: You have heard testimony from several—I guess a lot of witnesses—that some of these broadcasts had a notation "Naked Tapes"?

A: I heard the testimony, yes, sir.

Q: It's your position, is it not, that the term "Naked Tapes" was never used on the air?

A: Never used on the air, no, sir.

Q: There was never any caption?

A: I don't recall any caption at all, sir.

After considering all of the evidence, we conclude the jury's verdict is not so against the overwhelming weight and preponderance of the evidence that it is clearly wrong and manifestly unjust. Although there is conflicting evidence as to whether there were captions implying naked individuals in the broadcasts, the jury heard evidence from both sides concerning their allegations and were free to decide whether appellees made a false statement that subjected the trial appellants to ridicule. The jury finding that the trial appellants were not libeled is not so against the overwhelming weight and preponderance of the evidence that it is clearly wrong and manifestly unjust.

### 2. Invasion of Privacy

The trial appellants' complain the evidence is insufficient to support the jury's verdict on the invasion of privacy issue. They assert that being photographed in a private place is not a matter of public concern.

■ The taping of high school students changing clothes by their band director involves the welfare of minor children and potential harm to minor children by school personnel. To prevail on their claim for the wrongful disclosure of private matters, appellants needed to show that the facts publicized were not of legitimate public concern. *Carr v. Mobile Video Tapes, Inc.*, 893 S.W.2d 613, 622 (Tex. App.—Corpus Christi 1994, no writ). The possible commission of a crime and the resulting consequences are events of legitimate public concern. *See Cox Broad. Corp.*, 420 U.S. at 492, 95 S.Ct. 1029. On one of the broadcasts, Luis Saenz, the Cameron County District Attorney, stated "some of the crimes that we're looking at are obviously crimes involving children . . . crimes where kids are exploited." C. Doe and E. Doe admit that the story was of concern to the public. It is also relevant that appellees limited the exposure of the identity of appellants by distorting the images of the students and by not giving the names or addresses of the students on the videotapes.

■ After considering all of the evidence, we conclude the jury's finding that the privacy of the trial appellants was not invaded is not so against the overwhelming weight and preponderance of the evidence that it is clearly wrong and manifestly unjust. The jury heard evidence from both parties concerning the broadcasts and was free to decide whether the story was of legitimate public concern.

We hold the evidence is factually sufficient to support the jury's findings that appellees neither libeled nor invaded the privacy of the trial appellants. We overrule appellants' point of error number five.

### E. Conclusion

We affirm the trial court's order granting appellees' motion for summary judgment against the minor children D. Doe, F. Doe, H. Doe, I. Doe, and S. Doe and their parents as their next friends. We also affirm the trial court's take-nothing judgment against C. Doe and E. Doe and their parents as their next friends.