

**NUMBER 13-11-00001-CV**

# COURT OF APPEALS

# THIRTEENTH DISTRICT OF TEXAS

# CORPUS CHRISTI – EDINBURG

STATE OF TEXAS,                                        **Appellant,**

**v.**

BURNS MOTORS, INC.,                                    **Appellee.**

### On appeal from the 275th District Court of of Hidalgo County, Texas.

# MEMORANDUM OPINION

### Before Justices Garza, Benavides, and Vela
### Memorandum Opinion by Justice Garza

Appellant, the State of Texas, sued appellee, Burns Motors, Inc. ("Burns"), for alleged violations of the Deceptive Trade Practices Act ("DTPA"). *See* TEX. BUS. & COM. CODE ANN. § 17.46(a), (b)(9) (West 2011). A jury found in favor of Burns. By a single issue, the State contends that the trial court erred in submitting a definition of "price

bumping"—a "non-laundry list" violation of the DTPA—that improperly required intentional conduct. We conclude that the error, if any, committed by the trial court was harmless, *see* TEX. R. APP. P. 44.1(a)(1), and affirm the trial court's judgment.

## I. BACKGROUND

In the 1990s, Burns and other local car dealerships experienced excessive vehicle thefts. Threatened with the loss of its business insurance coverage, Burns instituted several measures to address the problem, including the installation of alarms on all vehicles that lacked a manufacturer-installed alarm. Burns sold the alarm and a dealer-installed fabric protectant together as a "Protection Package" for $799. Testimony at trial established that if a customer did not wish to purchase the alarm, Burns removed it. Some customers negotiated the price of the Protection Package and paid less than $799. Burns pre-printed the term "Security System" along with the $799 fee on its "Salesman's Worksheet," a two-sided form used by salesmen to negotiate the final price of a vehicle with customers. Burns paid its salesmen a $20 bonus for each alarm sold on a new vehicle. Approximately nine out of ten customers purchased the alarm.

The State sued Burns, alleging that Burns's business practices violated the DTPA during the relevant time period between July 1, 2000 and June 30, 2001. Specifically, the State alleged that Burns: (1) "advertis[ed] vehicles at a sales price with the intent not to sell them as advertised," *see* TEX. BUS. & COM. CODE ANN. § 17.46(b)(9) (providing that "advertising goods or services with intent not to sell them as advertised" is a false, misleading, or deceptive act or practice); and (2) engaged in the false, misleading, or deceptive practice of "bumping up the price of vehicles" by using a

2

worksheet pre-printed with the $799 charge for the "Protection Package," *see id.* §

17.46(a) (permitting the State to sue for any act or practice alleged to be false,

misleading, or deceptive). With regard to the "bait advertising" or intent-not-to-sell-as-

advertised claim, the State's petition alleged:

> 13. Defendant Burns Motors did not intend to sell the new vehicles at the advertised sales price because it intended to add the mark-up cost of a security system and/or fabric protectant to the advertised sales price of the new vehicles at the time of the sale-purchase transaction. For example, an inconspicuous footnote in the newspaper advertisements indicated that the cost of a[n] anti-theft system and/or protection package was to be added to the advertised sale price.

As to the "price-bumping" claim, the petition alleged:

> 14. Defendant Burns Motors failed to include the mark-up cost of the security system and/or fabric protectant in the advertised sales price although defendant, pursuant to established operating procedure, installed the security system and fabric protectant on new vehicles at the time they were received into inventory from the manufacturer. Additionally, from the outset, defendant meant to charge more than the advertised sales price (that is, bump up the price) of vehicles and had a strategy in place to accomplish this. For example, defendant used a preprinted sales form, called the "salesman's worksheet" that already had the term "Protection Package" or "Security System" and the associated charge of "[$]799.00" printed on the line item for accessories. Because the salesman's worksheet is a dealership form used during the price negotiation with customers, the preprinting itself makes it appear that the purchase of the protection package/security system is required and implies that the fee is non-negotiable.

At the charge conference, Burns argued that because the State's pleadings and

theory of the case alleged that Burns intentionally engaged in price-bumping, the

definition of price-bumping in Question Two should include the word "intentionally." The

State's proposed definition did not differ significantly from Burns's proposed definition

except that it did not include "intentionally." The State argued—and asserts on

appeal—that it was not required to prove intent, but only that (1) Burns engaged in

3

price-bumping and (2) such a practice was false, misleading, and deceptive. The trial court overruled the State's objection and permitted the addition of "intentionally" to the definition of price-bumping. By answering "no" to Question Two, the jury found that Burns did not engage in price-bumping. By its only issue, the State contends that (1) the trial court erred in permitting the definition of price-bumping to include an intent element, and (2) the error was harmful because it improperly increased the State's burden of proof.

## II. STANDARD OF REVIEW AND APPLICABLE LAW

"The trial court enjoys wide discretion in framing a jury charge and is given broad latitude to determine the propriety of explanatory instructions and definitions." *Hatfield v. Solomon*, 316 S.W.3d 50, 62 (Tex. App.—Houston [14th Dist.] 2010, no pet.) (citing *H. E. Butt Grocery Co. v. Bilotto*, 985 S.W.2d 22, 23 (Tex. 1998)); *see also Shupe v. Lingafelter*, 192 S.W.3d 577, 579 (Tex. 2006) ("We review a trial court's decision to submit or refuse a particular instruction under an abuse of discretion standard."); *Doe v. Mobile Video Tapes, Inc.,* 43 S.W.3d 40, 50 (Tex. App.—Corpus Christi 2001, no pet.). A trial court abuses its discretion if it acts arbitrarily, unreasonably, or without reference to any guiding principles. *Doe*, 43 S.W.3d at 50–51. "A judgment should not be reversed because of a failure to submit other and various phases or different shades of the same question." *Krishnan v. Ramirez*, 42 S.W.3d 205, 220 (Tex. App.—Corpus Christi 2001, pet. denied) (quoting *Sheldon L. Pollack Corp. v. Falcon Indus., Inc.*, 794 S.W.2d 380, 383 (Tex. App.—Corpus Christi 1990, writ denied)). To determine whether an alleged error in the jury charge is reversible, we consider the pleadings of the parties, the evidence presented at trial, and the charge in its entirety, and we reverse

4

the trial court only when the error in the charge amounted to such a denial of the rights of the complaining party that it probably caused the rendition of an improper judgment. *Doe*, 43 S.W.3d at 51; *see* TEX. R. APP. P. 44.1(a)(1); *Wal-Mart Stores, Inc. v. Johnson*, 106 S.W.3d 718, 723 (Tex. 2003); *Recognition Commc'ns, Inc. v. Am. Auto. Ass'n, Inc.*, 154 S.W.3d 878, 885 (Tex. App.—Dallas 2005, pet. denied). Charge error is generally considered harmful if it relates to a contested, critical issue. *Columbia Rio Grande Healthcare, L.P. v. Hawley*, 284 S.W.3d 851, 856 (Tex. 2009). "Submission of an improper jury question can be harmless error if the jury's answers to other questions render the improper question immaterial." *City of Brownsville v. Alvarado*, 897 S.W.2d 750, 752 (Tex. 1995). "A jury question is considered immaterial when its answer can be found elsewhere in the verdict or when its answer cannot alter the effect of the verdict." *Id.*

### III. DISCUSSION

Question One, which submitted the State's bait-advertising claim to the jury, asked, in pertinent part:

> Did defendant, Burns Motors, Inc., acting through its agents, servants, and employees, engage in a false, misleading, or deceptive act or practice in the conduct of trade or commerce?
>
> "False, misleading, or deceptive act or practice" means advertising goods with intent not to sell them as advertised.

The jury answered, "No." Question Two asked, in pertinent part:

> Did defendant, Burns Motors, Inc., acting through its agents, servants, and employees, engage in the practice of price-bumping in the conduct of trade or commerce?
>
> "Price-bumping" means a scheme or plan used by Burns Motors, Inc. to charge more than the advertised sales price by intentionally making the purchase of the alarm system and fabric protection appear as if it is

5

required and by implying that the fee is non-negotiable when the alarm system and fabric protection was installed before the vehicle was sold to any customer.

As noted, the State's only objection was that "intentionally" should not be included in the definition of price-bumping. The State's proposed definition stated:

"Price-bumping" means a scheme or plan used by a[n] auto dealership, at the closing of the sales transaction, to increase the total cost of a vehicle by automatically adding—to the vehicle's sales price—a standard charge for an accessory (or accessories), such as an alarm system or fabric protection, that was installed on the vehicle before the customer is given an opportunity to order it as an add-on to the vehicle the customer is purchasing.

Assuming, without deciding, that the trial court erred by including "intentionally" in the definition of price-bumping, we conclude that any error was harmless. As noted above, to determine whether alleged charge error is reversible, we consider the parties' pleadings, the evidence presented, and the entire charge, and reverse only if the alleged error probably caused the rendition of an improper judgment. *Doe*, 43 S.W.3d at 51; *see* TEX. R. APP. P. 44.1(a)(1).

Here, as Burns notes, the submitted definition of price-bumping conformed to the pleadings. *See* TEX. R. CIV. P. 278. The State's pleadings alleged that "from the outset, [Burns] meant to charge more than the advertised sales price (that is, bump up the price) of vehicles and had a strategy in place to accomplish this." In opening argument, the State told the jury that Burns's practice of automatically adding the $799 for the Protection Package (the alleged price-bumping) was "evidence of their intent not to sell at the advertised price." It also told the jury that this case was about "a scam," that Burns's "tactic" of price-bumping was a "trick to jack up car prices," that Burns "orchestrated a deceptive sales scheme known as price-bumping," and that the jury

6

would be asked to decide whether Burns was "cheating" by the manner in which it sold alarm systems. Moreover, the State's proposed definition of price-bumping defined the term as a "scheme or plan" to increase the vehicle's sales price. A "scheme" is "a systemic plan" or "an artful plot or plan, usu[ally] to deceive others." *See* BLACK'S LAW DICTIONARY 1462 (9th ed. 2009). A "plan" is "a method of achieving an end" and "always implies mental formulation," whereas "scheme" "stresses calculation of the end in view and may apply to a plan motivated by craftiness and self-interest." *See* MERRIAM WEBSTER'S COLLEGIATE DICTIONARY 889 (10th ed. 1996). We conclude that by defining price-bumping as "a scheme or plan," the State's own definition encompassed intentional conduct. Because the submitted definition of price-bumping conformed to the pleadings and the State's theory of the case as argued to the jury, and because the State's proposed definition encompassed intentional conduct, we cannot say that any error in including "intentionally" in the definition probably caused the rendition of an improper judgment or prevented the State from properly presenting its case on appeal. *See* TEX. R. APP. P. 44.1(a). We overrule the State's sole issue.

### IV. CONCLUSION

We affirm the trial court's judgment.

_____
DORI CONTRERAS GARZA
Justice

Delivered and filed the
8th day of March, 2012.

7